IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN HENRY RAMIREZ, § | | |
|     Petitioner, § | | |
| § | | |
|     v. § | Civil No. 12-CV-410 | |
| § | | |
| LORIE DAVIS, Director, § | THIS IS A DEATH | |
| Texas Department of Criminal § | PENALTY CASE | |
| Justice, Correctional § | | |
| Institutions Division, § | | |
|     Respondent. § | | |

**\* <u>JOHN HENRY RAMIREZ IS SCHEDULED TO BE
EXECUTED ON FEBRUARY 2, 2017</u> \***

MOTION FOR APPOINTMENT OF NEW
COUNSEL PURSUANT TO 18 U.S.C. § 3599

    Petitioner, John Henry Ramirez, is currently facing execution on February 2, 2017, without counsel. He respectfully asks this Court to order the appointment of new counsel to represent him in clemency proceedings and to investigate whether his court-appointed federal habeas counsel ineffectively defaulted substantial claims of ineffective assistance of trial counsel while representing him as court-appointed state habeas counsel. In support of his motion, Mr. Ramirez would show as follows:

I.
INTRODUCTION

    Mr. Ramirez has been represented by court-appointed federal habeas counsel laboring under a conflict of interest since at least May 28, 2013, when the Supreme Court held, in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), that the equitable exception

to procedural default of ineffective-assistance-of-trial-counsel (IATC) claims announced in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), applies to Texas state litigants. Mr. Ramirez's court-appointed federal habeas counsel represented Mr. Ramirez in state habeas and was, therefore, conflicted from identifying and litigating claims implicating *Martinez* and *Trevino*, which require argument that state habeas counsel ineffectively defaulted IATC claims.

When *Trevino* came down, Mr. Ramirez's federal counsel had not yet filed his initial federal habeas petition, yet there is no indication in the record that Mr. Gross ever consulted with Mr. Ramirez about the conflict created by *Trevino*, or obtained a waiver of it. Absent a knowing, voluntary waiver of his right to conflict-free counsel, Mr. Ramirez is entitled to the appointment of substitute or supplemental counsel to investigate grounds for and prepare a Rule 60(b) motion based on a defect in the integrity of his original proceeding resulting from the deprivation of conflict-free counsel.

In addition, on November 19, 2016, Mr. Ramirez asked his federal counsel to remove himself from his case after learning of his execution date and informed counsel that he was seeking to find *pro bono* attorneys to represent him in available remaining proceedings. After receiving this letter, Mr. Gross undertook no further representation of his client, including the filing of a clemency application. However, counsel filed no motion in this court seeking withdrawal, removal, or replacement, and no withdrawal, removal, or replacement order ever issued. *See* 18 U.S.C. § 3599(e). Thus, while federal counsel continued to represent Mr. Ramirez *de jure*, he

2

ceased representing Mr. Ramirez *de facto*. The result was that Mr. Ramirez's only legally authorized representative at the time filed no clemency petition for Mr. Ramirez.

Mr. Ramirez has a right, under 18 U.S.C. § 3599(e), to court-appointed representation on "all available post-conviction process," including "proceedings for executive or other clemency." He seeks appointment of conflict-free counsel to preserve that right before the State proceeds with his execution.

## II.
### PROCEDURAL HISTORY AND STATEMENT OF THE RELEVANT FACTS

John Henry Ramirez was arrested on February 20, 2008, for the capital murder of Pablo Castro, committed on July 19, 2004. *See* Tex. Pen. Code § 19.03(a)(2). Jury selection began eight months after Mr. Ramirez's arrest, on October 22, 2008. At the sentencing phase of trial, and at Mr. Ramirez's request, defense counsel presented only one witness, and offered the following closing argument: "May it please the Court and Counsel for the State and ladies and gentlemen of the jury, I'm reading from the Holy Bible, the New International [V]ersion, Psalm 51, verse 3. 'For I know my transgressions and my sin is always before me. Amen.'" On December 8, 2008, the 94th District Court of Nueces County sentenced Mr. Ramirez to death. The judgment was affirmed on direct appeal. *Ramirez v. State*, 2011 Tex. Crim. App. Unpb. LEXIS 183 (Tex. Crim. App. 2011) (unpublished).

Michael Gross represented Mr. Ramirez in state habeas proceedings. He filed an application asserting five claims for relief. The trial court granted an evidentiary hearing on three of those claims—that Mr. Ramirez was denied his federal

3

constitutional right to a public trial; that Mr. Ramirez's due process and fair trial rights were violated by his shackling during trial; and that trial counsel rendered ineffective assistance by failing to recognize Mr. Ramirez's incompetency to waive the presentation of mitigating evidence and by failing to present additional mitigating evidence at sentencing.[1]

In support of his claim that trial counsel were ineffective for failing to present mitigation evidence, Mr. Ramirez presented affidavits from family members and a clinical psychologist. At the hearing, the State presented testimony from both trial defense counsel, two Nueces County sheriffs, and the defense-retained psychologist/mitigation investigator at trial. Because the court took judicial notice of the family member affidavits, Mr. Gross agreed to forego presentation of family member testimony relevant to the claim the IATC claim. He did present the testimony of psychologist Joann Murphey, state habeas mitigation investigator Gerald Byington, and Eric Perkins, an attorney in Nueces County who practiced criminal law, family law, general litigation and business law, and who had handled one death penalty trial.

The trial court signed the state's proposed findings of fact and conclusions of law four days after they were submitted—and before the defense had submitted their own. The only claim decided on the merits was Mr. Ramirez's IATC claim, and of the six subparts to that claim, the only argument that countenanced extra-record

---

[1] The court found no contested issues of fact related to the two remaining claims: Mr. Ramirez's absence from the courtroom during a critical juncture and that the Texas death penalty scheme is unconstitutionally vague.

evidence was that trial counsel were ineffective for failing to present mitigating evidence. Notably, in recommending the denial of relief on that claim, the trial court found:

> Applicant has not raised a complaint in his present application that his trial attorneys were ineffective for failing to investigate mitigation evidence, but has instead limited his ground on mitigation evidence to a complaint that, "counsel were ineffective in failing to recognize that John [Ramirez] was unable and incompetent to direct counsel to not call any further witnesses during the punishment phase of the trial," and that "Defense counsel's performance was deficient in failing to present this mitigation testimony." (Application pp. 113-114).

*Ex parte John Henry Ramirez*, Cause No. 04-CR-3453-C (Jan. 9, 2012), USDC Dkt. #14 at 12. The trial court found that the claim was without merit. The Texas Court of Criminal Appeals (CCA) adopted the trial court's findings, conclusions, and recommendation and denied state habeas relief on October 10, 2012. *Ex parte Ramirez*, 2012 Tex. Crim. App. Unpub. LEXIS 1080 (Tex. Crim. App. 2012) (unpublished).

While Mr. Ramirez's state habeas application was pending, the Supreme Court issued its opinion in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In *Martinez*, the Court announced a new equitable exception to the procedural default of IATC claims in federal court, under which the default of a claim is excused if the petitioner shows that the claim is substantial, meaning it has "some merit," and that the claim was not raised in state court because of the ineffective assistance of state habeas counsel, judged under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Martinez*, 132 S. Ct. at 1318-19. Thus, to benefit under *Martinez*, state prisoners in federal court must allege that state habeas counsel rendered prejudicially deficient

5

performance, and in most cases, must conduct investigations into trial counsel's performance that state habeas counsel failed to conduct.

Mr. Gross filed a motion for appointment of counsel in federal habeas under 18 U.S.C. § 3599 on October 15, 2012, seven months after *Martinez* came down. Although the motion disclosed that he had represented Mr. Ramirez in state habeas proceedings, it asked the Court to appoint Mr. Gross. The motion did not mention *Martinez* and did not indicate whether Gross disclosed or advised Mr. Ramirez about the potential conflict it created or whether Mr. Ramirez waived the conflict. The Court appointed Mr. Gross.

On May 28, 2013, before Ramirez's habeas petition was filed, the Supreme Court decided *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), holding that the equitable exception to procedural default announced in *Martinez* applies to Texas state prisoners in federal habeas proceedings. Mr. Gross filed nothing alerting the Court to the conflict of interest created by the *Martinez-Trevino* decisions at that time. Nor does there appear in the record any indication that Mr. Ramirez ever waived the conflict.

Mr. Gross filed a habeas petition on October 9, 2013. The federal petition re-raised the five claims Mr. Gross had raised in state habeas and presented no new claims for relief. Mr. Gross did not seek investigative services to investigate the existence of procedurally defaulted IATC claims or his own potential ineffectiveness in defaulting those claims. The petition did not make any mention of *Martinez* or *Trevino*. The Director also omitted any mention of *Martinez* or *Trevino* in its answer.

6

In the time between the completion of briefing and this Court's order denying habeas relief, the Supreme Court and the Fifth Circuit both addressed representation questions under 18 U.S.C. § 3599 similar to Mr. Ramirez's. First, on January 20, 2015, the Supreme Court decided in *Christeson v. Roper*, 135 S. Ct. 891 (2015), that "a significant conflict of interest arises" in federal habeas proceedings – implicating 18 U.S.C. § 3599's substitution provisions – when "an attorney's interest in avoiding damage to [his] own reputation is at odds with his client's strongest argument." *Id.* at 894. In *Christeson*, § 3599 counsel missed the filing deadline for the federal habeas petition. Counsel did not seek equitable tolling, because, as the Supreme Court notes, "any argument for equitable tolling would be premised on their own malfeasance in failing to file timely the habeas petition." *Id.* at 892-93. Because counsel cannot reasonably be expected to press an argument that "denigrate[s] their own performance," the Supreme Court held that Christeson was entitled to a remand and appointment of substitute, conflict-free counsel to investigate and present an equitable tolling argument.

On March 30, 2015, the Fifth Circuit decided *Mendoza v. Stephens*, 783 F.3d 203 (5th Cir. 2015), and *Speer v. Stephens*, 781 F.3d 784 (5th Cir. 2015), which presented the question whether state prisoners whose federal habeas counsel represented them in state habeas proceedings are entitled to substitute or supplemental counsel under § 3599 because "it would be a conflict of interest for [them] to now determine whether [their] state conduct was ineffective" for purposes of vindicating their clients' rights under *Martinez* and *Trevino*. *Speer*, 781 F.3d at

7

785. In both cases, the Court remanded the cases to the district court and ordered the appointment of supplemental counsel to investigate whether the petitioner could establish cause and prejudice to overcome the procedural default of any new IATC claims under *Martinez* and *Trevino*.

Judge Owen, filing a separate concurrence in *Mendoza*, found that the appointment of substitute or supplemental counsel was required by the Supreme Court's earlier opinions in *Christeson* and *Martel v. Clair*, 132 S. Ct. 1276, 1286 (2012), in which the Supreme Court held that "even in the absence of [§ 3599], a court would have to ensure that the defendant's statutory right to counsel was satisfied throughout the litigation; for instance, the court would have to appoint new counsel if the first lawyer developed a conflict with . . . the client." *Mendoza*, 783 F.3d at 206-07 (Owen, J., concurring).

In *Speer*, the Fifth Circuit found that § 3599 counsel was conflicted "in the sense that every lawyer charged to examine the performance of counsel is conflicted in that task when the performance is his own." *Id.* Because of federal habeas counsel's conflict, the Court acted in the interests of justice and directed the appointment of supplemental counsel "for the sole purpose of determining whether Speer has additional habeas claims that ought to have been brought." *Id.* at 786.

Despite these developments in the law related to a state capital prisoner's right to conflict-free representation in federal habeas proceedings in the post-*Martinez* and *Trevino* world, nothing was brought to the attention of the court regarding the conflict of interest created by the decisions or Mr. Ramirez's right to supplemental or

substitute counsel to investigate potentially viable defaulted IATC claims. This Court accordingly did not address the conflict that Mr. Gross was laboring under throughout his representation of Mr. Ramirez, and on June 10, 2015, denied habeas relief. Mr. Gross continued to represent Mr. Ramirez on appeal.

On October 28, 2016, the trial court scheduled Mr. Ramirez's execution for February 2, 2017. On November 19, 2016, Mr. Ramirez sent a letter to Mr. Gross requesting that he remove himself from Mr. Ramirez's case because he was seeking the assistance of pro bono counsel who would not file anything on his behalf while Gross remained his appointed counsel under § 3599. Mr. Ramirez also requested that Mr. Gross not file anything further on his behalf, including a clemency petition. Exhibit A. After receiving the letter from Mr. Ramirez, Mr. Gross filed no motion to withdraw or for the appointment of substitute counsel. *Cf.* 18 U.S.C. § 3599(e). Based on the February 2 execution date, Mr. Ramirez's clemency petition was due to be filed with the Texas Board of Pardons and Paroles by January 12, 2017. Gross, considering himself to lack authority, filed no clemency petition.

Undersigned counsel began receiving requests from representatives of Mr. Ramirez around December 25, 2016, to assist Mr. Ramirez. Because of undersigned counsel's busy caseload, which included representation of a client with a January 25, 2017 execution date, he did not agree to represent Mr. Ramirez at that time. On January 17, 2017, undersigned counsel secured a modification of his client's January 25 execution date. Thereafter, undersigned counsel began looking at Mr. Ramirez's case, and has identified Mr. Ramirez's lack of conflict-free counsel during the initial

9

federal habeas proceeding and his *de facto* lack of representation after his execution date was set. Accordingly, undersigned agreed to file the instant motion for appointment of counsel to investigate and file a clemency petition on Mr. Ramirez's behalf, and to investigate and potentially litigate any issues arising from the conflict of interest Mr. Gross labored under in light of *Martinez* and *Trevino*, including but not limited to a motion for relief from the judgment.[2]

### III.
### REQUEST FOR NEW COUNSEL

**A. Mr. Ramirez is entitled to new counsel to represent him in clemency proceedings under 18 U.S.C. § 3599 and *Harbison v. Bell*, 556 U.S. 180 (2009).**

Because he is indigent and serving a sentence of death, Mr. Ramirez is entitled to the appointment of counsel to represent him in 28 U.S.C. § 2254 proceedings. 18 U.S.C. § 3599(a)(2). Moreover, Congress has decided that the duty of counsel appointed under § 3599(a)(2) goes beyond the mere investigation and litigation of § 2254 proceedings, and includes all available post-conviction process. Subsection (e) provides in pertinent part:

> Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney [appointed under § 3599(a)] shall represent the defendant throughout every subsequent stage of available judicial proceedings, including . . . proceedings for executive or other clemency as may be available to the defendant.

18 U.S.C. § 3599(e).

---

[2] On January 27, 2017, Mr. Gross filed in the state trial court a Motion to Withdraw or Modify Execution Date. While Mr. Gross filed the motion, he specifically stated that Mr. Ramirez no longer wanted to him as counsel and that he could not represent Mr. Ramirez further because of Mr. Ramirez's wishes and because he is conflicted in light of the *Martinez* and *Trevino* decisions. See Exhibit B.

Mr. Ramirez has been denied representation with respect to his state clemency proceedings. Indeed, both significant rights articulated in subsection (e) have been violated in the critical last months of Mr. Ramirez's sentence. First, his § 3599 counsel ceased representation despite having never been replaced by similarly qualified counsel. Though Mr. Ramirez did instruct Mr. Gross that he wished for him to "remove" himself "completely" from his case, Mr. Gross did not take the necessary steps to so remove himself. He filed no motion to withdraw with this Court, nor did he instruct Mr. Ramirez that, to remove him as counsel, he himself should file a motion with this Court. Most importantly, this Court never ordered his removal or withdrawal. Thus, Mr. Ramirez has been denied continuous representation as guaranteed by subsection (e).[3] *See Harbison v. Bell*, 556 U.S. 180, 193 (2009) ("[s]ubsection (e) emphasizes continuity of counsel"); *Martel*, 123 S. Ct. at 1286 (Under § 3599, courts "have to ensure that the defendant's statutory right to counsel was satisfied throughout the litigation").

Second, despite not having been discharged by the Court, Mr. Gross did not represent Mr. Ramirez in state clemency proceedings. Though the language of subsection (e) is plain on its face, the Supreme Court has squarely held that state

---

[3] Nor did Mr. Ramirez waive his right to court-provided representation by his attempt to fire Mr. Gross. No court has ever determined that Mr. Ramirez knowingly, intelligently, and voluntarily waived his right to counsel under 18 U.S.C. § 3599. Nor would such a statement constitute a waiver in any event. *See* Order Denying Motion to Withdraw at 2, *Gamboa v. Davis*, No. 15-cv-00113 (W.D. Tex. Sep. 8, 2016) ("Petitioner's assertions that he wishes to be represented by an unidentified 'pro bono counsel on appeal' does not, standing alone, establish petitioner has made a voluntary, intelligent, and knowing of his statutory right to the assistance of court-appointed federal habeas counsel.").

11

prisoners have a mandatory right to federally-appointed counsel for state clemency proceedings:

> [O]nce federally funded counsel is appointed to represent a state prisoner in § 2254 proceedings, she "shall also represent the defendant in such . . . proceedings for executive or other clemency as may be available to the defendant." § 3599(e). Because state clemency proceedings are "available" to state petitioners who obtain representation pursuant to subsection (a)(2), the statutory language indicates that appointed counsel's authorized representation includes such proceedings.

*Harbison*, 556 U.S. at 185-86; *see also Battaglia v. Stephens*, 824 F.3d 470, 474 (5th Cir. 2016) (In *Harbison v. Bell*, the Supreme Court held that attorneys appointed under § 3599 are *obligated* to represent their clients in state clemency proceedings") (emphasis added).

In so finding, the Supreme Court emphasized the importance of qualified representation to assist indigent, capitally sentenced prisoners in clemency, and condemned the precise situation presented by Mr. Ramirez's case:

> [I]t is entirely plausible that Congress did not want condemned men and women to be abandoned by their counsel at the last moment and left to navigate the sometimes labyrinthine clemency process from their jail cells. In authorizing federally funded counsel to represent their state clients in clemency, Congress ensured that no prisoner would be put to death without meaningful access to the "fail-safe" of our justice system.

*Harbison*, 556 U.S. at 194 (citations and quotation marks omitted).

The Fifth Circuit recently had the opportunity to further clarify the requirement of § 3599 counsel at the final stages of advocacy, including during state competency proceedings. In *Battaglia v. Stephens*, the prisoner sought appointment of substitute § 3599 counsel to litigate a *Ford* execution-competency claim in state

12

court, arguing he had been abandoned by his initially-appointed federal habeas counsel. 824 F.3d at 471-72. The Court relied on the law governing the established right to counsel during state clemency proceedings and extended that right to state prisoners seeking to litigate *Ford* claims in state court. Thus, the reasoning in *Battaglia* was governed by the law pertaining to rights of federal representation on clemency.

Regarding the question of abandonment, the Fifth Circuit first noted that the Supreme Court has recognized that courts must appoint new counsel if the lawyer has abandoned his client. *Battaglia*, 824 F.3d at 474 (*citing Martel*, 132 S. Ct. at 1286). In his advisory to the Court, Battaglia's § 3599 counsel stated that he did not believe he had a duty to represent his client in state competency proceedings, and therefore did not believe he had abandoned him. *Id*. The Fifth Circuit disagreed. Based on *Harbison*'s requirement that § 3599 counsel represent their clients in all available subsequent proceedings, including state clemency proceedings, the Court held that counsel's subjective beliefs related to his duties of continuing representation are irrelevant to the inquiry of abandonment: "Whether or not Gross *should have* represented Battaglia in state competency proceedings, he *did not do so*. Accordingly, we conclude that Gross 'abandoned' Battaglia for purposes of a *Ford* claim." *Id.* at 474 (emphasis in original).

Based on its finding of abandonment, the Court ordered the appointment of new counsel under *Martel*. *Id*. at 473. The Court further held that the district court had erred in denying Battaglia's concurrently filed motion for a stay of execution:

13

> Again, Battaglia effectively lacked counsel to prepare his claim of incompetency. In our view, it would be improper to approve his execution before his newly appointed counsel has time to develop his *Ford* claim. A stay is needed to make Battaglia's right to counsel meaningful.

*Id.* at 475.

Mr. Ramirez is similarly situated. The only distinguishing aspect of the two petitioners' cases is that Mr. Ramirez was left without representation for purposes of filing a state clemency petition, whereas Mr. Battaglia was abandoned by § 3599 counsel for purposes of filing a state *Ford* claim. Capitally-convicted prisoners' rights to § 3599 representation on clemency are, if anything, *more* firmly established than their rights to representation in state competency-to-be-executed proceedings, and *Battaglia* should govern this request.

Mr. Ramirez requests the appointment of new counsel to represent him in state clemency proceedings, and separately files a motion for "a stay of execution to make [his] § 3599 right effective." *Battaglia*, 824 F.3d at 475 (citations and quotation marks omitted).

**B. Mr. Ramirez is entitled to conflict-free counsel to investigate the grounds for and prepare a Rule 60(b) motion based upon a defect in the integrity of the original proceeding due to the deprivation of conflict-free representation in the proceeding.**

Death-sentenced prisoners who are or become financially unable to obtain adequate representation are entitled to adequate representation under § 3599(a)(2). This statutory right to counsel encompasses the right to representation by an attorney not laboring under a conflict of interest that would impede his or her representation. *Martel*, 123 S. Ct. at 1286. "A 'significant conflict of interest' arises

14

when an attorney's 'interest in avoiding damage to [his] own reputation' is at odds with his client's 'strongest argument[.]'" *Christeson*, 135 S. Ct. at 894 (*quoting Maples v. Thomas*, 132 S. Ct. 912, 925 n.8 (2012)). When such a conflict arises, a district court abuses its discretion by failing to appoint new, conflict-free counsel: "given a capital defendant's 'statutory right to counsel,' even 'in the absence of § 3599(e) a district court would be compelled 'to appoint new counsel if the first lawyer developed a conflict.'" *Id.* at 895 (*quoting Martel*, 132 S. Ct. at 1286).

Where they apply, *Martinez* and *Trevino* create a conflict of interest for federal habeas counsel who served as state habeas counsel. *See Mendoza*, 783 F.3d at 203; *Speer v. Stephens*, 781 F.3d at 784; *Tabler v. Stephens*, 591 Fed. Appx. 281, 281 (5th Cir. 2015) (unpublished). *See also Christeson*, 135 S. Ct. at 894-95 (holding that an attorney suffers from a "disabling conflict of interest" when his "interest in avoiding damage to [his] own reputation is at odds with his client's strongest argument.") (citations and quotations omitted). "A clear conflict of interest exists in requiring [a habeas petitioner's] counsel to identify and investigate potential errors that they themselves may have made in failing to uncover ineffectiveness of trial counsel while they represented [the petitioner] in his state post-conviction proceedings." *Gray v. Pearson*, 526 Fed. Appx. 331, 334 (4th Cir. 2013).

In Mr. Ramirez's case, his § 3599 counsel suffered from a conflict of interest beginning, at the latest, five months before he filed the initial federal habeas

15

petition.[4] The record does not reflect that counsel ever informed Mr. Ramirez of the conflict or sought a waiver of the conflict before proceeding with the representation. As a result, Mr. Ramirez was represented throughout his federal habeas proceedings by an attorney with whom he had a conflict of interest—at least regarding the investigation and development of new IATC claims in the federal forum.

Reasonable jurists can debate whether this constitutes a defect in the integrity of the federal habeas proceedings sufficient to warrant reopening under Federal Rule of Civil Procedure 60(b). In *Clark v. Stephens*, 627 Fed. Appx. 305 (5th Cir. 2015) (unpublished), the Fifth Circuit addressed a COA application on a Rule 60(b) motion predicated on the petitioner's denial of conflict-free counsel to litigate defaulted IATC claims post-*Martinez*. In *Clark*, the Fifth Circuit had denied the petitioner a COA on his federal habeas petition two weeks before *Martinez* was announced. *Id.* at 306. After *Martinez* came down, conflict-free counsel investigated and discovered an IATC claim which had not been previously presented to the federal or state courts. Clark thereafter moved for relief from the federal judgment denying his habeas application. The district court denied the motion. It concluded it was untimely and failed to present extraordinary circumstances. It also denied a Certificate of Appealability. *Clark*, 627 Fed. Appx. at 307.

The Fifth Circuit granted a COA. It held that

---

[4] This date is calculated from the date that *Trevino* came down, since it was not clear that *Martinez* applied to Texas state cases. However, arguably the date should be calculated from the time of *Martinez*, which preceded Mr. Gross's motion for appointment in federal court, since whether *Martinez* applied to Texas state cases was being actively litigated.

16

> reasonable jurists could debate whether Clark's federal habeas proceeding was defective, either because the counsel the federal district court appointed to represent Clark labored under a conflict of interest, or because [counsel's] failure to argue his own ineffectiveness as state habeas counsel is sufficient to satisfy Rule 60(b) even though it is an 'omission.'

*Id.* at 309.

As the Fifth Circuit noted in *Clark*, a Rule 60(b) filed under these circumstances would not be based on a "mere change in decisional law," which ordinarily does not warrant reopening. Instead, it would be based on a defect in the integrity of the proceedings caused by § 3599 counsel's conflict of interest. *Id.* at 307. Mr. Ramirez is entitled to the appointment of qualified counsel to investigate and litigate a Rule 60(b) motion based on these grounds.

## CONCLUSION

For the foregoing reasons, Mr. Ramirez respectfully requests that this Court grant his motion for the appointment of new, conflict-free counsel to represent him in state clemency proceedings and to investigate and prepare a Rule 60(b) motion.

Respectfully submitted,

/s/ Gregory W. Gardner
Gregory W. Gardner
Law Office of Gregory W. Gardner, PLLC
P.O. Box 2366
Boulder, Colorado 80306
T: (303) 507-8984
F: (303) 580-0021
ggardner@gwgardnerlaw.com
Bar No. 2707338

### CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Respondent, Jennifer Wren Morris, about this Motion. The Respondent opposes the Motion.

/s/ Gregory W. Gardner
Gregory W. Gardner

### CERTIFICATE OF SERVICE

I certify that, on this 27th day of January 2017, I filed this Motion with its attachments in this Court's CM/ECF system, which delivered electronic copies to all counsel of record. In addition, I delivered an electronic copy of the Motion and its attachments through email to Assistant Attorney General Jennifer Wren Morris at jennifer.morris@oag.texas.gov. Ms. Morris consented to service through electronic mail.

/s/ Gregory W. Gardner
Gregory W. Gardner