IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

JOHN H. RAMIREZ,            §
           Petitioner,         §
                              §
v.                               §       No. 2:12-CV-00410
                              §       *CAPITAL CASE*
LORIE DAVIS,             §       Execution scheduled for
Director, Texas Department of    §       after 6:00 p.m., Thursday,
Criminal Justice,          §       February 2, 2017
Correctional Institutions Division,   §
           Respondent.     §

**RESPONDENT'S RESPONSE IN OPPOSITION TO
PETITIONER'S MOTIONS FOR STAY OF EXECUTION
AND APPOINTMENT OF COUNSEL**

Petitioner John Henry Ramirez is scheduled to be executed after 6 p.m.

(Central Time) on Thursday, February 2, 2017, for the capital murder of Pablo

Castro. Ramirez has unsuccessfully challenged his conviction and death

sentence in both state and federal court—this Court denied his federal habeas

petition in June of 2015. Ramirez now seeks a stay of execution and

appointment of new counsel so he can get around the already-expired deadline

for his clemency petition and so he can pursue another round of federal habeas

proceedings. Docket Entry (DE) 43; DE 44. This Court should deny the motion

for a stay because Ramirez fails to allege—much less demonstrate—the

violation of any constitutional right. And this Court should deny the motion for

the appointment of new counsel because Ramirez's allegations regarding the violation of his statutory right to counsel are unsubstantiated.

## PROCEDURAL HISTORY

### I.    State Proceedings

Ramirez was convicted and sentenced to death for the brutal capital murder of Pablo Castro. 1 Clerk's Record (CR) 2–4; 2 CR 258–60. The Texas Court of Criminal Appeals (CCA) upheld Ramirez's conviction and death sentence. *Ramirez v. State*, No. 76,200, 2011 WL 1196886 (Tex. Crim. App. 2011).

Michael Gross was appointed to represent Ramirez in state habeas proceedings. While the direct appeal was pending, Gross filed a state habeas application on Ramirez's behalf, raising the following claims: (1) Ramirez's absence from the courtroom at a critical juncture in his trial violated his due process rights; (2) Ramirez was denied his right to a public trial; (3) Ramirez's due process and fair trial rights were violated when he was shackled during trial; (4) Ramirez was denied the effective assistance of trial counsel because counsel (a) inadequately questioned potential jurors about their views on the death penalty; (b) inadequately investigated and presented mitigating evidence; (c) failed to make certain objections; (d) failed to ensure Ramirez's competency to waive the presentation of mitigating evidence during the penalty phase; and (e) failed to preserve a claim for appellate review; and

(5) Texas's capital sentencing scheme is impermissibly vague. 1 SHCR 2–115.[1]

After a live evidentiary hearing, the state habeas court entered findings of fact and conclusions of law recommending that relief be denied. 3 SHCR 518–40. The CCA adopted the trial court's recommendation and denied relief. *Ex parte Ramirez*, No. 72,735-03, 2012 WL 4834115 (Tex. Crim. App. Oct. 10, 2012) (unpublished order).

## II.   Federal Proceedings

Michael Gross continued to represent Ramirez in federal proceedings.[2] Gross timely filed Ramirez's federal habeas petition in this Court. DE 6. In it, he raised the claims he raised in state habeas proceedings, including the five ineffective-assistance (IATC) claims. *Id.* This Court denied relief and a COA,

---

[1]   "SHCR" refers to the state habeas clerk's record, the transcript of documents and pleadings filed, in Ramirez's *third* state habeas proceedings, No. 72,735-03. The first and second state writ applications, No. 72,735-01 and -02 are irrelevant to the instant proceeding.

[2]   This situation is not unique. Ramirez is one of many capital offenders who have been represented by the same counsel in both state and federal habeas corpus proceedings. This practice took advantage of the inherent efficiencies of counsel being able to use much of the same legal research and factual knowledge in subsequent proceedings. And in fact, before 2010, it was standard practice in Texas for habeas petitioners' attorneys to serve both roles.

The practice began to change when the Texas Legislature established the Office of Capital and Forensic Writs (OCFW) in September of 2010. OFFICE OF CAPITAL AND FORENSIC WRITS, http://www.ocfw.texas.gov (last visited Jan. 30, 2017). The OCFW provides representation for indigent death-sentenced prisoners in state post-conviction proceedings but is statutorily precluded from practicing in federal court. Tex. Gov't Code Ann. §78.054 (West 2014).

finding all of the (IATC) claims meritless. DE 34.[3] To appeal this Court's judgment, Ramirez sought a COA from the Fifth Circuit, but his application was denied. *Ramirez v. Stephens*, 641 Fed. App'x 312 (5th Cir. Feb. 4, 2016). From there, Ramirez filed a petition for certiorari in the Supreme Court, but it too was denied. *Ramirez v. Stephens*, 137 S. Ct. 279 (2016).

### III. Ramirez's Scheduled Execution Date and Pro Bono Counsel's Advice and Subsequent Filings

On October 28, 2016, the trial court scheduled Ramirez's execution date for February 2, 2017. On November 19, 2017, Ramirez wrote Gross a letter in which he directed Gross not to file anything on his behalf. Petitioner's Exhibit A. Ramirez explained that he was "seeking" pro bono counsel who told him that he needed to sever all ties with Gross: "My life is worth infinitely more than any ethical lines so I need you to REMOVE yourself completely from my case." *Id.* Covering the important issue that would come up again, Ramirez wrote: "[P]lease DO NOT file for Clemency under any circumstances whatsoever[.]" *Id.*

On November 22, Ramirez wrote a letter to his godmother, Janice Trujillo, instructing her to call Gross to "inform him that [Ramirez did] not want [Gross] filing the Clemancy petition for [him] cuz [he was] getting some

---

[3]    This Court found Ramirez's remaining claims procedurally defaulted (and meritless), but their disposition is not relevant to the instant motions.

Pro Bono lawyers to do that & other filings." Respondent's Exhibit A. So, on December 1, Janice Trujillo wrote to Gross, attempting to "sever[] all ties . . . in order that [the pro bono organizations] might help [Ramirez]." *Id.*

Apparently, "representatives of Mr. Ramirez" contacted Gregory Gardner "around" Christmas day to inquire whether he might be able to assist Ramirez. DE 43 at 9. Because he was busy, he claims he did not begin looking into Ramirez's case until January 17, 2017. Ten days later, at 4:56 p.m. on Friday, January 27—six days before Ramirez's scheduled execution—Gardner filed a motion for appointment of new counsel and a motion for a stay. DE 43; DE 44. Significantly, at the crux of the motions is Ramirez's complaint that Gross did not file a clemency petition on his behalf.

## ARGUMENT

Ramirez's motion for new counsel and motion for a stay are premised on his statutory right to conflict-free counsel. DE 43 at 10–17; DE 44 at 9–14. Presuming—without substantiating—Gross's conflict of interest, Ramirez proposes two potential avenues of relief that he might pursue with new counsel: clemency and Rule 60(b) relief. DE 44 at 13. But both avenues are foreclosed in this case. Ramirez's deadline for filing a clemency petition has passed. And Rule 60(b) relief is not available to him. With no viable avenue for relief, a stay is not warranted here. Moreover, because Ramirez's allegations

of Gross's conflict are unsubstantiated (and rather suspicious), the interests of justice weigh against appointing new counsel.

## I.    Ramirez Is Not Entitled to a Stay.

Ramirez is not entitled to a stay of execution because he cannot demonstrate a substantial denial of a constitutional right that would become moot if he were executed. *See Barefoot v. Estelle*. 463 U.S. 880, 889 (1983). Indeed, he fails to demonstrate or even allege the violation of *any* constitutional right. Furthermore, as discussed in detail below, all potential avenues of relief are foreclosed in this case.

### A.    Because Ramirez's failure to meet his clemency deadline does not implicate a federal constitutional right, it cannot support a stay of execution.

Ramirez asks this Court for new counsel and for a stay so that new counsel can prepare for and represent him in clemency proceedings. DE 43; DE 44. But Ramirez's deadline for filing a clemency petition expired on January 12, 2017. And this Court's authority to grant a stay is not implicated by a petitioner's desire to revive expired state law remedies. *See e.g.*, *Rosales v. Quarterman*, 565 F.3d 308, 311–12; (5th Cir. 2009); *see also McFarland v. Scott*, 512 U.S. 849, 857 (1994) ("Federal courts cannot enjoin state-court proceedings unless the intervention is authorized expressly by federal statute or falls under one of two exceptions to the Anti-Injunction Act.").

Ignoring the directly applicable precedent, Ramirez asks this Court to extend *Battaglia*[4] to make Ramirez's "right to counsel meaningful." DE 44 at 11. But *Battaglia* is inapposite here. The only meaningful similarity between this case and *Battaglia* is the cast of characters: In *Battaglia*, Michael Gross was serving as the petitioner's appointed counsel under § 3599. Twenty days before Battaglia's scheduled execution date, Gregory Gardner filed a motion asking the Court to appoint new counsel to investigate and prepare a habeas application raising a *Ford*[5] claim. 482 F.3d at 471–72. Because Gross indicated that he did not believe his representation extended to state competency proceedings, the Fifth Circuit found that Gross had "abandoned Battaglia for purposes of pursuing a *Ford* claim." *Id.* at 474.

The key distinction between this case and *Battaglia* is that the petitioner in *Battaglia* asserted a *Ford* claim, thereby invoking his substantive *constitutional right* not to be executed if incompetent. Ramirez does not raise a *Ford* claim or any federal constitutional claim at all. Instead, he asks this Court to grant a stay because he missed his clemency deadline. But clemency proceedings do not implicate any federal constitutional right and therefore cannot serve as grounds for a stay. *See Faulder v. Tex. Bd. of Pardons &*

---

[4]      *Battaglia v. Stephens*, 824 F.3d 470 (5th Cir. 2016).

[5]      *Ford v. Wainwright*, 477 U.S. 399 (1986).

*Paroles*, 178 F.3d 343, 344–45 (5th Cir. 1999) (holding Texas clemency proceedings meet minimum constitutional standards required by *Ohio Adult Parole Auth. v. Woodward*, 523 U.S. 272 (1998)). *Tamayo v. Perry*, 553 F. App'x 395, 400–02 (5th Cir. 2014) (recognizing statutory right to counsel in clemency proceedings acknowledged by *Harbison v. Bell*, 556 U.S. 180 (2009), implicates no constitutional concerns and denying a stay of execution). Furthermore, the reason Gross did not file a clemency petition in this case is not that he did not think his representation extended to such proceedings, but instead, because Ramirez explicitly directed him not to. *E.g.*, Petitioner's Exhibit A; Respondent's Exhibit A. In following Ramirez's instruction, Gross set the stage for the motions now before this Court, enabling Gardner to argue that Ramirez was deprived of his right to representation for clemency proceedings. This is not abandonment; it is gamesmanship. That the same players have found themselves in very similar circumstances to those that helped them secure last-minute relief for their client in *Battaglia* raises questions, to say the least.

B.    **Because Rule 60(b) relief is not available to Ramirez, it cannot support a stay of execution.**

The only way Ramirez can reach Gross's alleged conflict of interest under § 3599 is through a motion for Rule 60(b) relief, but such relief is foreclosed here. To succeed on a Rule 60(b) motion, the movant must demonstrate: (1) that his motion is not really a successive petition; (2) that his motion is

timely; and (3) that there are extraordinary circumstances justifying relief. *See Gonzalez v. Crosby*, 545 U.S. 524, 531–32, 535 (2005). If Ramirez is granted a stay to file a Rule 60(b) motion, it will be successive, untimely, and ordinary. In other words, he will fail at every element.

### 1.   Any Rule 60(b) motion Ramirez files will be a successive petition.

A district court only has jurisdiction to consider a Rule 60(b) motion in habeas proceedings if the motion "attacks, not the substance of the federal court's resolution of the claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez*, 545 U.S. at 532. If the motion (1) presents a new habeas claim or (2) attacks the federal court's previous resolution of a claim on the merits, the motion must be treated as a second-or-successive petition and subjected to AEDPA's limitation on such petitions. 28 U.S.C. § 2244(b); *see also Gonzalez*, 545 U.S. at 531–32; *In re Sepulvado*, 707 F.3d 550, 552 (5th Cir. 2013).

A federal court resolves a claim on the merits when it determines that there are not "grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d)," as opposed to when a petitioner alleges "that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Gonzalez*, 545 U.S. at 532 n.4. As the Fifth Circuit

noted in its *Clark* COA grant, a Rule 60(b) motion based on "habeas counsel's omissions ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." *Clark v. Stephens*, 627 Fed App'x 305, 309 (quoting *Gonzalez*, 545 U.S. at 532); *accord Brooks v. Bobby*, 660 F.3d 959, 963 (6th Cir. 2011) (finding motion based on "general ineffective assistance of habeas counsel" claim barred as "a plain-vanilla successive petition designed to do nothing more than attack his earlier counsel's omissions"); *Ward v. Norris*, 577 F.3d 925, 932 (8th Cir. 2009) ("Although an assertion of ineffective assistance of habeas counsel may be characterized as a defect in the integrity of the proceeding, it ultimately seeks to assert or reassert substantive claims with the assistance of new counsel."). But again, in order to bring a proper Rule 60(b) motion, a movant must show "a non-merits-based defect in the district court's earlier decision on the federal habeas petition." *Balentine v. Thaler*, 626 F.3d 842, 847 (5th Cir. 2010). Addressing this issue, the Fifth Circuit recently reiterated the extraordinary difficulty in bringing a claim of procedural defect rather than a successive claim:

> [P]rocedural defects are narrowly construed. They include fraud on the habeas court, as well as the erroneous previous rulings which precluded a merits determination—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar. They generally do not include an attack based on the movant's own conduct, or his habeas counsel's omissions,

> which do not go to the integrity of the proceedings, but in effect ask
> for a second chance to have the merits determined favorably.

*In re Edwards*, No. 17-10066, 2017 WL 367985, at *4 (5th Cir. Jan. 25, 2017)

(citing *In re Coleman*, 768 F.3d 367, 371–72 (5th Cir. 2014)). The appellate

court further explained "that arguments about counsel's failure to discover and

present particular arguments sound[] in substance, not in procedure." *In re*

*Coleman*, 768 F.3d at 372.

Ramirez's proposed Rule 60(b) motion is substantive. It has to be, as he

does not have any defaulted claims to which the *Martinez/Trevino* exception

might apply. Gross raised five IATC claims in state and federal proceedings.

This Court adjudicated the merits of all of them, which means they cannot be

raised again. § 2244(b)(1); *Williams v. Thaler*, 602 F.3d 291, 301 (5th Cir.

2010). To be clear, this means Ramirez cannot reassert that trial counsel was

ineffective for: (a) inadequately questioning potential jurors about their views

on the death penalty; (b) inadequately investigating and presenting mitigating

evidence; (c) failing to make certain objections; (d) failing to ensure Ramirez's

competency to waive the presentation of mitigating evidence during the

penalty phase; and (e) failing to preserve a claim for appellate review.

Gross's thorough representation of Ramirez in state and federal habeas

proceedings takes a wide range of possibilities off of the table. Knowing this,

Ramirez indicates that he would like to reopen proceedings to "investigate

whether [Gross] ineffectively defaulted substantial claims of ineffective assistance of counsel (IATC) while representing him as court-appointed state habeas counsel." DE 44 at 1, 10, 13.[6] In other words, he wants to raise new claims. That is the definition of successive.

Accordingly, § 2244 applies, and Ramirez's new claims would have to be dismissed unless the following were satisfied:

> (A)   The applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (B)   (i) the factual predicate for the claim could not have been discovered through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).

Because there is no retroactive constitutional law at issue here, Ramirez would have to establish that the factual predicate of his new claim could not have been discovered through due diligence and that the facts underlying the claim would establish his innocence. *Id.* He will not be able to do either.

---

[6]    Because this Court adjudicated the merits of Ramirez's previously-raised IATC claims, they cannot be relitigated. § 2244(b)(1).

Ramirez's guilt is indisputable. His co-defendant described the murder to the jury: Ramirez began "wrestling around" with Castro and then was "just stabbing that man. He was stabbing him until he fell on his knees." 18 Reporter's Record (RR) 137. Other eyewitnesses watched Ramirez search Castro's body for money and then flee. 16 RR 101–02, 202.

Nor can Ramirez demonstrate that whatever new evidence he may find could not have been discovered through diligence. His arguments for relief are all premised on the assumption that Gross was ineffective—i.e., not diligent. If Ramirez's sentence is delayed so that he can conjure new claims, they will all be barred as successive. As such, a stay is not warranted here.

### 2. Any Rule 60(b) motion Ramirez files will be untimely.

Federal Rule of Civil Procedure 60(c)(1) provides that motions under Rule 60(b)(6) must be presented within "a reasonable time," "unless good cause can be shown for the delay." *In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004). What constitutes "good cause" for delay "must necessarily be evaluated on a case-by-case basis." *Id.* "The timeliness of the motion is measured as of the point in time when the moving party has grounds to make such a motion, regardless of the time that has elapsed since the entry of judgment." *First Republic Bank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 120 (5th Cir. 1992). But "Rule 60(b) simply may not be used as an end run to effect an appeal

outside the specified time limits, otherwise those limits become essentially meaningless." *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 288 (5th Cir. 1985).

Any Rule 60(b) motion Ramirez files will be too late, as his delay is unreasonable. From his instant motions, it is clear that his Rule 60(b) motion would be premised on the alleged conflict of interest Gross developed after the Supreme Court issued its opinions in *Martinez* and *Trevino*.

The Supreme Court decided *Martinez* on March 20, 2012, and *Trevino* on May 28, 2013. Ramirez's case was pending on this Court's docket for more than two years after *Trevino*. DE 34. But Ramirez did not file his motion in the intervening *years*—instead, he waited. Now, three years and eight months have passed since *Trevino*, and still no Rule 60(b) motion has been filed. This is unreasonable. *See, e.g.*, *Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (holding that waiting eight months after relevant change in law—and two days before scheduled execution—to bring a Rule 60(b) motion was not within a reasonable time); *Pruett v. Stephens*, 608 F. App'x 182, 185–86 (5th Cir. Apr. 10, 2015) (upholding district court's determination that waiting nineteen months after *Trevino* was decided was unreasonable);*Hall v. Stephens*, 2014 WL 4215329 at *1 (5th Cir. Aug. 27, 2014) (upholding district court's determination that two-year delay was unreasonable); *In re Paredes*, 587 F. App'x 805, 823–25 (5th Cir. Oct. 25, 2014) (upholding district court's

determination that waiting thirteen months after *Trevino* issued was unreasonable).

While Ramirez does not address the timeliness issue directly, he sets the stage to blame Gross if given the opportunity to file a Rule 60(b) motion. DE 44, 4–5, 7. To the extent that he plans to argue good cause by alleging that Gross was deficient, there is nothing in Rule 60(c) that resets the timeliness requirements each time a litigant obtains a new attorney. Indeed, the Fifth Circuit rejected a similar argument in *In re Paredes*. 587 F. App'x at 824–25.

Even assuming that Ramirez could not have raised the conflict issue until after he began working with new counsel, his continued delay is unreasonable. As early as November 19, 2016, Ramirez had been discussing his case with and being advised by other attorneys. *See* Petitioner's Exhibit A (telling Gross not to file anything because the pro bono organization "will not file anything while [he] still has a lawyer because of fear of crossing some 'ethical' lines of some sort"). Moreover, Ramirez's adamancy in relaying to Gross that he did not want Gross to file a clemency petition appears strategic and was presumably driven by whatever pro bono organization was advising him. They knew that he had been represented by the same counsel in state and federal proceedings, but they did not file anything. Instead, they punted the case to Gregory Gardner, who was too busy to look at the case until January 17th. In any event, Gardner should not have waited until ten days later—six

days before Ramirez's execution—to file his motions before this Court. And still, no Rule 60(b) motion has been filed. "Good cause" cannot be manufactured in this way.

### 3. The requisite extraordinary circumstances for Rule 60(b) relief are not present here.

Assuming no jurisdictional barrier and timely filing, Rule 60(b) relief is only available if "extraordinary circumstances" are present. *Gonzalez*, 545 U.S. at 535 (quoting *Ackerman v. United States*, 340 U.S. 193, 199 (1950)). "Such circumstances will rarely occur in the habeas context." *Id.* And the Fifth Circuit has held that Rule 60(b) relief is not available even for a change in decisional law. *Diaz v. Stephens*, 731 F.3d 370, 376 (5th Cir. 2013); *Adams v. Thaler*, 679 F.3d 312, 319 (5th Cir.).

*Martinez* did not create a new rule of constitutional law, nor is it to be applied retroactively. 132 S. Ct. at 1315. The Supreme Court discussed at length the consequences of a new rule of constitutional law and firmly indicated that *Martinez* was only a "qualification" of the ruling in *Coleman v. Thompson*, 501 U.S. 722 (1991). *Id.* at 1319–20. Thus, the Fifth Circuit has properly held that *Martinez*, "which creates a narrow exception to *Coleman*'s holding regarding cause to excuse procedural default, does not constitute an 'extraordinary circumstance' under Supreme Court and [Fifth Circuit] precedent to warrant Rule 60(b) relief." *Adams*, 679 F.3d at 320–21; *see also*

*Foster v. Thaler*, 481 F. App'x 229, 230 (5th Cir. 2012). More recently the Fifth Circuit has determined that "*Trevino*'s recent application of *Martinez* to Texas cases does not change that conclusion in any way." *Diaz*, 731 F.3d at 376.

Without addressing the Fifth Circuit's holding that a change in decisional law is insufficient to invoke Rule 60(b), Ramirez seems to suggest that the appellate court might invoke it pursuant to its decisions in *Mendoza*,[7] *Speer*,[8] *Tabler*,[9] and *Clark*. DE 43 at 15–16; DE 44 at 12. But if *Martinez* and *Trevino* are not extraordinary enough to support the invocation of Rule 60(b), then the subsequent jurisprudence based on them is not either. Allowing federal habeas counsel's failure to raise an unexhausted and defaulted IATC claim under *Martinez* to constitute an exceptional circumstance would circumvent the Fifth Circuit's holdings in *Diaz* and *Adams*. That is, if the underlying change in decisional law is not an exceptional circumstance, then counsel's decision not to raise an argument on that change cannot be an exceptional circumstance either. Otherwise, the holdings in *Diaz* and *Adams* would be inconsequential.

---

[7]     *Mendoza v. Stephens*, 783 F.3d 203 (5th Cir. 2015).

[8]     *Speer v. Stephens*, 781 F.3d 784 (5th Cir. 2015).

[9]     *Tabler v. Stephens*, 591 F. App'x 281 (5th Cir. 2015).

Moreover, the Fifth Circuit's equitable decisions in *Mendoza*, *Speer*, and *Tabler* are not instructive here. None of those cases involved Rule 60(b) motions and therefore cannot help Ramirez establish the extraordinary circumstances he needs to proceed at this point. Furthermore, Ramirez misinterprets the cases to establish a generally applicable rule, when, in fact, the decisions were based in equity: "We do not interpret *Martinez* or *Trevino* as creating the right to new counsel." *Speer*, 781 F.3d at 784. We also do not interpret . . . *Christeson*[10] . . . as supporting appointment of new or additional counsel. . . ." *Id.* at 787 n.5. Instead, the appellate court applied § 3599's "peculiarly context-specific"[11] interests-of-justice standard to determine that the facts of those cases justified remand. *Id.* at 786; *Mendoza*, 783 F.3d at 208.

Ramirez is looking for more than remand and therefore must establish extraordinary circumstances. His sole support comes from the unpublished Fifth Circuit opinion granting a COA in *Clark*. Even if we look past *Clark*'s precedential limitations, it does not speak to the circumstances in this case. *Clark* is an example of the Fifth Circuit's application of case-specific equity. There, the petitioner demonstrated that: (1) trial counsel failed to investigate or present a case in mitigation; and (2) that state habeas counsel's investigation into that underlying claim was less than five hours. *Clark*, 627

---

[10]     *Christeson v. Roper*, 135 S. Ct. 891 (2015).

[11]     *Martel v. Clair*, 132 S. Ct. 1276, 1287 (2012).

F. App'x at 308; *see also Edwards v. Davis*, 2017 WL 367985, at *5 (describing Clark's trial counsel and state habeas counsel as doing "a paltry job investigating and presenting mitigating evidence"). In other words, Clark made a case for the *Martinez/Trevino* exception and the underlying claim that it would support. And he began pursuing that exception three months after *Trevino* was decided. *See Clark*, 608 F. App'x at 306. Ramirez, on the other hand, raises the issue for the first time three years and eight months after *Trevino*—less than a week before his execution—and is still coming up emptyhanded. *See Gonzalez*, 545 U.S. at 538 (indicating that a change in the law "is all the less extraordinary" when a petitioner demonstrates a lack of diligence in pursuing the issue). Despite pro bono counsel's investigation into his case (again beginning at least two months ago), Ramirez fails to provide any underlying IATC claims and fails to substantiate his allegations against Gross as state habeas counsel. *See* discussion *infra* Part II. Unlike in *Clark*, the "conflict" Ramirez alleges is neither real nor extraordinary. It is a run-of-the-mill, last-ditch attempt to thwart his sentence.

## II. Ramirez is Not Entitled to New Counsel.

Ramirez's argument for new counsel seems to assume that mere allegations of counsel's conflict of interest entitle a petitioner to new counsel at any point and time in federal habeas proceedings. DE 43 at 7–10. But the law does not support his assumption.

While Ramirez does have a statutory right to counsel in this late stage of proceedings, the right does not entitle him to counsel of his choice at any given time. *See* 18 U.S.C. § 3599; *Harbison v. Bell*, 556 U.S. 180, 194 (2009); *Rosales v. Quarterman*, 565 F.3d 308, 312; (5th Cir. 2009). Before granting a motion for substitution, a court must be satisfied that the substitution serves the "interests of justice." *Martel*, 132 S. Ct. at 1287. In determining whether a petitioner meets this standard, a court should consider factors such as: "the timeliness of the motion . . . and the asserted cause for the complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's responsibility, if any, for that conflict)." *Id.* "Protecting against abusive delay is an interest of justice" that must be considered in ruling on any motion to substitute counsel. *Id.* at 1286.

### A.    Ramirez's allegations of abandonment are unsubstantiated.

In support of his motion for the appointment of new counsel, Ramirez alleges that Gross "ceased representing [him] de facto." DE 43 at 3. But the only evidence Ramirez offers to support this allegation is that Gross followed his explicit instructions not to file a clemency petition. Paving the way for his new team of pro bono attorneys to file the instant motion (arguing that Gross did not file a clemency petition), Ramirez instructed Gross "NOT [to] file for Clemency under any circumstances whatsoever[.]" Petitioner's Exhibit A. And he told him again through his godmother: "I do NOT want [Gross] filing the

Clemancy petition for me be cuz I am getting some pro bono lawyers to do that."
Respondent's Exhibit A. Gross complied.

In any event, Gross did not "cease representing" Ramirez. He recently filed a motion in state court to withdraw or modify Ramirez's execution date. *See* DE 43 at 10 n.2. Upon information and belief, Gross appeared at a telephonic hearing on the motion on January 30, 2017, and later moved to withdraw the motion. Gross's recent filing and appearance on Ramirez's behalf make clear that he is acting as counsel. Thus, Ramirez's allegations of abandonment ring false. He had counsel during the time in which he could have filed a clemency petition, and he still has counsel today. Gross's decision to defer to his client's instruction not to file a clemency petition does not prove abandonment. If anything, it suggests that Gross was working with Ramirez (and his team of pro bono attorneys) to create an opportunity for the instant last-minute, abusive filings.

### B.   Ramirez's allegations of conflict are unsubstantiated.

Ramirez goes on to allege that Gross has been laboring under a conflict of interest since the Supreme Court issued its opinion in *Trevino*. DE 43 at 14–15. Citing *Christeson*, he argues that Gross was conflicted because he would have had to assert his own ineffectiveness to prove a *Martinez/Trevino* exception. DE 43 at 15. While that is true, *Christenson* does not confirm the existence of a conflict of interest in every situation in which one might possibly

arise. In fact, it refutes the idea that a statutory framework requiring counsel to assert his own misconduct is itself sufficient to establish a conflict of interest. 135 S. Ct. at 895 (recognizing that "not every case in which a counseled habeas petitioner . . . misse[s] AEDPA's statute of limitations . . . necessarily involves a conflict of interest"). The conflict must be factually substantiated.

In *Christeson*, court-appointed counsel did not communicate or meet with Christeson until six weeks after AEDPA's statute of limitations had expired. *Id.* at 892. Thereafter, counsel filed a petition for Christeson, but it was almost four months too late. *See id.* The district court dismissed the petition as untimely, never reaching the merits of its claims. *See id.* The only way Christeson's claims would ever be reviewed was if he were to demonstrate that his counsel's abandoning him constituted a "serious instance[] of attorney misconduct." *Id.* at 892, 894 (citing *Holland v. Florida*, 560 U.S. 631, 651–52 (2010)). Recognizing the inherent conflict of interest they had created, Christeson's counsel moved to withdraw from the case. *Id.* at 894. When the district court asked for further explanation for the motion, counsel "characterized [Christeson's] potential arguments in favor of equitable tolling as 'ludicrous,' and asserted that they had a 'legal basis and rationale for the [erroneous] calculation of the filing date.'" *Id.* at 895. Despite counsel's decision to aggressively discount their client's only remaining argument (for his life),

the district court and Eighth Circuit refused to allow withdrawal. *See id.* at 892. Reviewing the evidence of the conflict, the Supreme Court held that the district court abused its discretion when it rejected counsel's second motion to withdraw. *Id.* at 895. Importantly, the holding rested not on the inherent conflict that arises when an attorney misses AEDPA's one-year deadline, but on the evidence of a conflict in Christeson's case. *See id.* at 895. Specifically, the Court found that Christeson's counsel's contentions were "directly and concededly contrary to their client's interest, and manifestly served their own professional and reputational interests." *Id.*

The differences between this case and *Christeson* are readily apparent. In *Christeson*, counsel abandoned their death-sentenced client for the better part of a year and missed the most important deadline they could have missed, completely precluding review of their client's claims. *Id.* at 893. Here, on the other hand, there are still no allegations of any deficiency on Gross's part. Gross raised five IATC claims in state court. They were thoroughly briefed and covered a wide range of issues. Gross supported the claims with evidence and expert testimony in the state evidentiary hearing. Then, in federal court, he reasserted them. This Court adjudicated their merits and denied relief. Gross continued pursuing relief until Ramirez directed him to stop doing so.

With no allegation or support for any unraised IATC claims, Ramirez now asks this Court to assume there is one, and to assume that Gross was

deficient for not raising it. But that is not the standard. The conflict the Supreme Court found in *Christeson* was based on the fact that the petitioner's "strongest argument" would have required counsel to "damage his own reputation." 135 S. Ct. at 894. Ramirez presents no argument—much less his strongest. This is probably because Gross raised Ramirez's strongest arguments in state and federal proceedings, rendering the *Martinez/Trevino* exception useless to Ramirez.

Skipping over the fact-specific inquiry that the interests-of-justice standard requires, Ramirez asserts and reasserts that *Martinez* and *Trevino* create an automatic conflict in every case in which a petitioner was represented by the same counsel in state and federal proceedings. But his interpretation cannot be reconciled with *Christeson* and is not supported by Fifth Circuit precedent. Although the Fifth Circuit has remanded some cases so that new counsel can return to the district court to investigate *Martinez/Trevino* issues, it has declined to adopt a generally applicable rule: "We do not read the Supreme Court as requiring a second federally appointed lawyer to plow the same ground ably plowed by the first federally appointed lawyer with no suggestion or hint of any shortcoming on his part." *Speer*, 781 F.3d at 786. True to the standard, the Fifth Circuit asks whether the interests of justice require the appointment of new counsel. *E.g.*, *id.*

In this case, the interests of justice weigh heavily against Ramirez. He presents a last-minute request for new counsel with "no hint of any shortcoming on [Gross's] part." *See id.* With nothing more than allegations of unsubstantiated conflict with unsubstantiated consequence, it appears Ramirez is seeking new counsel as a means to obtain a stay rather than as the result of any legitimate problem with his attorney. This Court should deny his motion for new counsel.

## III.   The Court Should Deny a Stay of Execution.

Ramirez is not entitled to a stay of execution because he cannot demonstrate a substantial denial of a constitutional right that would become moot if he were executed. In *Barefoot v. Estelle*, the Supreme Court held that a federal habeas applicant is entitled to a stay of execution only where the court of appeals is unable to resolve the merits of an appeal prior to the scheduled execution. 463 U.S. 880, 889 (1983). The Court also articulated guidelines for resolving requests for stays of execution.

First, the Court held that in order to demonstrate entitlement to a stay, a petitioner must establish more than "the absence of frivolity" or "good faith" on his part. *Id.* at 892-94. A petitioner must additionally demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *Id.* at 893 n.4 (citations omitted); *see also*

*Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (holding that the 28 U.S.C. § 2253 COA requirement is a codification of the prior CPC standard of *Barefoot*, i.e., a substantial showing of the denial of a constitutional right). In a capital case, a court may properly consider the nature of the penalty in deciding whether to grant a stay, but "the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate." *Barefoot*, 463 U.S. at 893.

Second, "a court of appeals, where necessary to prevent the case from becoming moot by the petitioner's execution, should grant a stay of execution pending disposition of an appeal where a condemned prisoner obtains a certificate of probable cause on his initial habeas appeal." *Id.* at 894; *see also Slack*, 529 U.S. at 483.

As discussed in detail above, Ramirez fails to identify any claims implicating constitutional rights or any viable avenues of relief. As such, he cannot demonstrate likelihood of success on the merits. Nor can he demonstrate that his grounds for relief amount to a substantial case on the merits that would justify the granting of relief. Under the circumstances of this case, a stay of execution would be inappropriate.[12]

---

[12]    A stay would also be inappropriate because this Court lacks jurisdiction; only the Fifth Circuit could grant a stay at this point.

## CONCLUSION

For the above reasons, the Director respectfully requests that this Court deny Ramirez's motions to stay the execution and to appoint new counsel.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas
JEFFREY C. MATEER
First Assistant Attorney General

ADRIENNE MCFARLAND
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Jennifer Wren Morris
*JENNIFER WREN MORRIS
Assistant Attorney General
Criminal Appeals Division
Texas Bar No. 24088680

*Counsel of Record

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936-1600
Fax: (512) 320-8132
e-mail: jennifer.morris@oag.texas.gov

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, January 30, 2017, a copy of the above and foregoing Response in Opposition to Petitioner's Motion for Stay of Execution and Motion for Appointment of Counsel has been served electronically to Gregory W. Gardner.

I hereby certify that on Monday, January 30, 2017, I filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record who consented in writing to accept this Notice as service of this document by electronic means:

Michael Gross
Gross & Esparza, P.L.L.C.
106 South St. Mary's Street, Ste. 260
San Antonio, TX  78205

s/ Jennifer Wren Morris
JENNIFER WREN MORRIS
Assistant Attorney General