United States District Court
Southern District of Texas
**ENTERED**
January 31, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN H RAMIREZ, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:12-CV-410 |
| | § | |
| LORIE DAVIS, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division | | |
| | | |
| Respondent. | | |

## ORDER

John H. Ramirez, an inmate on Texas' death row, is scheduled for execution on February 2, 2017. In 2012, this Court appointed Michael C. Gross under 18 U.S.C. § 3599 to represent Ramirez "throughout his federal habeas proceedings." D.E. 2. In 2015, this Court denied Ramirez's federal petition for a writ of habeas corpus. Mr. Gross represented Ramirez in the subsequent appellate proceedings.

On January 27, 2017, Gregory W. Gardner filed two motions on Ramirez's behalf: a motion to stay his execution, D.E. 44, and a motion for new counsel, D.E. 43. On January 31, 2017, the Court held a telephonic hearing. Based on the pleadings, the record, and the discussion from that hearing, the Court **grants** both motions and **stays** the execution of Ramirez's death sentence.

Given the short time remaining before Ramirez's execution, the substitution of counsel could only be given effect through a stay of his death sentence. This Court has

authority to grant a stay of execution. *Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016) ("'[O]nce a capital defendant invokes his § 3599 right, a federal court also has jurisdiction under [28 U.S.C.] § 2251 to enter a stay of execution' to make the defendant's § 3599 right effective.") (quoting *Charles v. Stephens*, 612 F. App'x 214, 219 (5th Cir. 2015)). A prisoner condemned to death, however imminent that death may be, has no automatic entitlement to a stay of execution. *See McFarland v. Scott*, 512 U.S. 849, 858 (1994). "A stay of execution is an equitable remedy that is not available as a matter of right." *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016). In deciding whether to issue a stay of execution, federal courts "are required to consider four factors: (1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest." *Buxton v. Collins*, 925 F.2d 816, 819 (5th Cir. 1991); *see also In re Campbell*, 750 F.3d 523, 534 (5th Cir. 2014). While not a dispositive factor, "[i]n a capital case, the possibility of irreparable injury weighs heavily in the movant's favor." *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982).

Two circumstances give rise to the pending motions. First, Ramirez contends that a stay is necessary because Gross' representation created an inherent conflict that prevented the litigation of potential claims. Gross represented Ramirez on state habeas review. In 2012, Ramirez filed a motion for the appointment of federal counsel requesting that Gross continue representing him in federal court. D.E. 1. At that time,

federal courts frequently appointed state habeas counsel with the understanding that an attorney's experience in state court would aid the preparation and litigation of a federal habeas petition.[1]  The Court appointed Gross to represent Ramirez "throughout his federal habeas proceedings."  D.E. 2.

By the time that Gross filed a federal habeas petition on October 9, 2013, two significant Supreme Court decisions discouraged a continuity of representation.  In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court held that the ineffectiveness of a prisoner's post-conviction attorney in the initial state habeas proceeding can be used to establish cause for a procedural default of ineffective-assistance-of-trial-counsel claims.  In *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the Supreme Court applied *Martinez* to cases rising from the Texas courts.  Subsequent cases encouraged the appointment of supplemental counsel or other remedial steps to give *Martinez* effect in already-ongoing federal habeas cases.  *See Speer v. Stephens*, 781 F.3d 784 (5th Cir. 2015); *Mendoza v. Stephens*, 783 F.3d 203 (5th Cir. 2015).  Neither party, however, alerted the Court to the need to reevaluate any representation in light of *Martinez*.[2]  Ramirez contends that he "is entitled to the appointment of substitute or supplemental counsel to investigate grounds for and prepare a Rule 60(b) motion based on a defect in the integrity of his original proceeding resulting from the deprivation of conflict-free counsel."  D.E. 44, p. 10.

---

[1]    Under the heading "Continuity of Representation," the CJA Guide to Judiciary Policy still states that "in the interest of justice and judicial and fiscal economy, unless precluded by a conflict of interest, presiding judicial officers are urged to continue the appointment of state post-conviction counsel, if qualified under Guide, Vol. 7A, § 620.60, when the case enters the federal system." 6 Guide to Judiciary Policy § 620.70.

[2]    Gross raised ineffective-assistance-of-trial-counsel claims in the habeas petition, but this Court ruled on their merits.

Respondent identifies procedural concerns with advancing new claims or otherwise litigating *Martinez* issues in a Rule 60(b) motion. Federal law disallows insertion of new claims in a Rule 60(b) motion, rendering such pleading a successive habeas petition. *See In re Edwards*, No. 17-10098, 2017 WL 383382, at *2 (5th Cir. Jan. 26, 2017); *In re Sepulvado*, 707 F.3d 550, 553 (5th Cir. 2013). Citing *Clark v. Stephens*, 627 F. App'x 305, 306 (5th Cir. 2015), Ramirez argues that the Fifth Circuit has not decided whether an inmate may use a Rule 60(b) motion to raise a *Martinez* issue because federal counsel handled the state habeas action. The record before the Court, however, is inadequate to decide whether *Martinez* may allow Ramirez to raise viable new claims in a Rule 60(b) motion, a successive federal habeas proceeding, or a successive state action. Given Ramirez's second argument, the Court considers the question of *Martinez*'s application to be premature.

As his second ground for a stay, Ramirez contends that Gross abandoned him by not filing a clemency petition. On October 28, 2016, the state trial court scheduled Ramirez's execution date for February 2, 2017. Under Texas procedure, an inmate facing execution may file a written application for a "reprieve from execution" or "commutation of death sentence to a sentence of life imprisonment . . . not later than the twenty-first calendar day before the execution is scheduled." 37 TEX. ADMIN. Code § 143.43(a), 143.57(b).

On November 19, 2016, Ramirez wrote Gross a letter which gives rise to the instant litigation. Ramirez explained: "I do not want you as my lawyer anymore & respectfully request that you REMOVE yourself completely from my case . . . ."

Ramirez instructed Gross to "NOT file any other motions or anything in my behalf" because he was "seeking other representation Pro Bono who will not file anything while I still have a lawyer . . . ." On that basis, Ramirez asked Gross to "REMOVE yourself completely from my case & also please DO NOT file for clemency . . . ." D.E. 43, Exhibit 1.

Even though Gross had already started preparing, Gross complied and did not file a motion for clemency. No motion for clemency was filed by anyone. The discussion in the January 31st hearing provided greater insight into the circumstances surrounding the motions pending before the court.

Gross considered himself to represent Ramirez still, but began communicating with an "organization" to find someone to replace him.[3] As the time for filing a clemency expired, the "organization" did not find anyone to represent Ramirez. On January 27, 2017, Gross filed a motion to withdraw Ramirez's execution date in state court, though an attorney from the "organization" had prepared that motion. Gross withdrew that motion after a telephonic hearing in the state court on January 30, 2017.

Ramirez's godmother contacted Gardner a few weeks ago asking him to represent Ramirez. Gardner spoke with someone in the National Habeas Assistance and Training Counsel Project who had contacted Gross, but could not find anyone to represent Ramirez. Without communicating with Gross, Gardner filed the instant motions.[4]

---

[3] The discussion in the hearing expressed some confusion about whether Gross worked with Texas Defender Services or someone with the National Habeas Assistance and Training Counsel Project.

[4] Respondent has accused Gross and Gardner of engaging in coordinated gamesmanship. Given the fact that both attorneys were involved in the *Battaglia* case, that argument has some purchase if reviewing the pleadings alone. The discussion in the hearing, however, did not suggest any manipulative tactics coordinated by Gross

The core question in this case is whether Gross owed Ramirez an obligation either to file a clemency petition or assure that he had legal representation. The parties' briefing focuses on the impact of *Battaglia v. Stephens*, 824 F.3d 470, 474 (5th Cir. 2016), in which the petitioner was also represented by Gross. In *Battaglia*, Gross refused to file a state competency action because he believed that "state competency proceedings are 'wholly outside the scope' of his representation under § 3599." *Id*. at 472. Shortly before Battaglia's execution date, pro bono attorney Gardner filed a motion to appoint counsel in federal court on Battaglia's behalf. Gardner specifically asked to litigate a claim of incompetency for execution under *Ford v. Wainwright*, 477 U.S. 399 (1986). Even though Gross had not been removed as counsel and "continues to represent Battaglia in other matters," the Fifth Circuit found that "he ha[d] 'abandoned' Battaglia with respect to state competency proceedings." *Battaglia*, 824 F.3d at 472. The Fifth Circuit recognized that, under *Harbison v. Bell*, 129 S. Ct. 1481 (2009), "attorneys appointed under § 3599 are obligated to represent their clients in state *clemency* proceedings . . . ." *Battaglia*, 824 F.3d at 474 (emphasis added). The Fifth Circuit extended *Harbison*'s holding about clemency proceedings to a state competency action: "Whether or not Gross *should have* represented Battaglia in state competency proceedings, he *did not* do so. Accordingly, we conclude that Gross 'abandoned' Battaglia for purposes of pursuing a *Ford* claim." *Id*.

Here, Gross did not file a clemency petition on Ramirez's behalf. Respondent argues that Gross simply followed Ramirez's direction by not filing a clemency petition.

---

and Gardner to delay the enforcement of an otherwise legal state judgment.

That argument, however, does not fully satisfy the question of whether Gross fulfilled his legal duty when Ramirez not only instructed him not to file a clemency petition, but also to end their legal relationship. Once a court appoints an attorney under § 3599, that attorney "shall represent the defendant *throughout every subsequent stage of available judicial proceedings*" unless that attorney is "replaced by similarly qualified counsel." 18 U.S.C. § 3599(e) (emphasis added). Notwithstanding Ramirez's express intent that Gross remove himself from the case, Gross did not move to substitute counsel or notify the court of a needed change in representation. Ramirez's letter itself did not end Gross' obligation to his client. The Fifth Circuit's "Plan for Representation on Appeal under the Criminal Justice Act" provides that "counsel appointed under the [CJA] by the district court shall continue to provide representation on appeal unless relieved by court order." Indeed, appointed counsel may be relieved by this obligation "only by [a] written order." "[C]ounsel is authorized--and indeed obligated--to continue representing [a capital] defendant until the court permits him to withdraw." *Wilkins v. Davis*, 832 F.3d 547, 558 (5th Cir. 2016).

Gross remained legal counsel for Ramirez after receiving the November 19, 2016 letter. Gross apparently understood that Ramirez's letter did not end their relationship and made some effort to find another attorney. Gross knew that Ramirez wanted someone to file a clemency petition, but at that point effectively stopped acting on Ramirez's behalf. Gross had a duty to either (1) inform the Court of his client's wishes and seek the substitution of new counsel or (2) ensure that a clemency petition was filed

on his client's behalf. Gross did neither. Gross' inaction prevented judicial consideration of whether the circumstances required the substitution of counsel.

Gross also created circumstances that left Ramirez effectively without counsel for state clemency proceedings. Appointed counsel must represent the defendant throughout "all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures," as well as "competency proceedings and *proceedings for executive or other clemency*." 18 U.S.C. § 3599(e) (emphasis added); *see also Wilkins v. Davis*, 832 F.3d 547, 557 (5th Cir. 2016). Clemency is not simply a matter of mercy, but is "the 'fail safe' in our criminal justice system." *Harbison*, 556 U.S. at 192 (quoting *Herrera v. Collins*, 506 U.S. 390, 415 (1993)). Unlike in *Battaglia*, it requires no extension of *Harbison* to find that counsel appointed under § 3599 has a legal duty to file a state clemency petition. Gross did not file a clemency petition or assure that someone else did.

At the heart of this case is an inmate whose attorney neglected an important legal obligation. Ramirez wanted a clemency petition filed on his behalf. Ramirez made efforts to find someone to represent him. Only a court, however, had authority to end the attorney/client relationship and find new counsel for Ramirez. Without a stay, no remedy would exist for the breach in duty that resulted in no clemency proceeding on Ramirez's behalf. The State of Texas' right to enforce its judgment must wait because the public interest lies in legal proceedings that honor and preserve inherent rights. The Court, therefore, will stay Ramirez's execution.

The short time before the pending execution date does not leave time for serious consideration of Ramirez's motion for the appointment of counsel. The Court finds that Gross should be withdrawn from representation, but the record before the Court does not yet indicate whether Gardner possesses the necessary qualifications to represent Ramirez. Given the immediacy of the circumstances, and the likelihood that Respondent will appeal, the Court grants the motion for appointment of counsel and provisionally requests that Gardner continue representing Ramirez in any appeal from this Order. After the conclusion of those proceedings, the Court will entertain a renewed motion for the appointment of counsel.

In conclusion, the Court **grants** Ramirez's motion to stay his execution scheduled for February 2, 2017. The Court provisionally **grants** Ramirez's motion for the appointment of counsel subject to reurging at the conclusion of any appeal from this Order. Mr. Gregory W. Gardner will represent Ramirez throughout the course of any litigation from this Order.

The Clerk will deliver a copy of this Order to the parties.

ORDERED this 31st day of January, 2017.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE