# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

JOHN HENRY RAMIREZ,

        Plaintiff,

v.

                                              NO. 2:12-cv-00410

LORIE DAVIS, DIRECTOR, TDCJ,

        Defendant.

## PETITIONER'S OPPOSED MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 60(b)

Under Federal Rule of Civil Procedure 60(b), Petitioner John Ramirez asks this Court for relief from judgment in light of current facts which show that this Court's 2015 decision and dismissal was done before the fraud and misconduct of appointed counsel Michael Gross was discovered. This fraud on the Court is exasperated when combined with other evidence discovered since the date of judgment in this habeas case.

The following aspect of this Court's 2015 Order is implicated:

> Ramirez has not shown that the state habeas court's decision was contrary to, or an unreasonable application of, federal law. The defense team investigated mitigating evidence for the punishment phase. In his opening argument, trial counsel provided broad outlines of what evidence the defense wanted to present. The substance of the road map trial counsel placed before the jury corresponds with the details found in the habeas affidavits. Ramirez has not identified any witness other than family members who could provide testimony exceeding trial counsel's opening argument.

Memorandum Opinion, 22.

## I.    RULE 60 IS THE APPROPRIATE PROCEDURAL VEHICLE

### A.    Introduction: The Director Has Stated The Necessity Of A Rule 60 Motion In Its Filing in the Fifth Circuit in 2017

In February 2017, the Director stated the obvious to the Fifth Circuit: "[a]t this point in the proceedings, the only way Ramirez can reach Gross's alleged conflict of interest under § 3599 is through a motion for Rule 60(b) relief . . . ."

Ramirez agrees to a point with this contention by his adversary. The area of disagreement, which militates in favor of relief from a discreet aspect of this Court's 2015 memorandum opinion, is that Gross labored under a mere 'conflict of interest.' Instead, it has become clear that Gross actively deceived this Court and others where he practiced in habeas litigation. In other words, Gross's conduct transcends a mere conflict and rises to a level that warrants Rule 60 relief under relevant Fifth Circuit caselaw.

### B.    Legal Standards

Federal Rule of Civil Procedure 60(b)(6) allows a district court to grant relief "from a final judgment, order or proceeding" for "any ... reason that justifies relief." FED. R. CIV. P. 60(b). To succeed on a Rule 60(b) motion, the movant must show (1) that the motion was made within a reasonable time, and (2) extraordinary circumstances exist that justify the reopening of a final judgment. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

"[T]o bring a proper Rule 60(b) claim" in a habeas proceeding, "a movant must show 'a non-merits-based defect in the district court's earlier decision on the federal habeas petition.' " *Edwards v. Davis (In re Edwards),* 865 F.3d 197, 204 (5th Cir.) (per curiam) (quoting *Balentine v. Thaler*, 626 F.3d 842, 847 (5th Cir. 2010)), *cert. denied*, 580 U.S. __, 137 S. Ct. 909 (2017).

"Because of the comparative leniency of Rule 60(b), petitioners sometimes attempt to file what are in fact second-or-successive habeas applications under the guise of Rule 60(b) motions." *Id*. at 203. Hence, courts must determine whether such a motion either: "(1) presents a new habeas claim (an 'asserted basis for relief from a state court's judgment of conviction'), or (2) 'attacks the federal court's previous resolution of a claim on the merits.' " *Id*. (quoting Gonzalez, 545 U.S. at 530).

"If the motion does either, then it must be treated as a successive habeas petition and subjected to AEDPA's limitation on those petitions." *Runnels v. Davis*, 2018 U.S. App. LEXIS 22535, *10 (5th Cir. 2018) (unpublished). *See also Gonzalez*, 545 U.S. at 530.

### C.  In Re Coleman

The most important case in the Fifth Circuit's doctrine is *Coleman v. Stephens (In re Coleman)*, 768 F.3d 367 (5th Cir. 2014).

There, the petitioner filed a Rule 60(b) motion, arguing in favor of finding a defect in the integrity of her original habeas petition because additional evidence from several witnesses on a particular claim had recently been discovered—evidence which was unavailable to the court when it decided the claim previously. The petitioner argued that her counsel's failure to discover and present this evidence rose to a level of constitutionally ineffective assistance that would justify relief from judgment. 768 F.3d at 371-72. The Fifth Circuit found that such a claim "is fundamentally substantive—she argues that the presence of new facts would have changed this court's original result." *Id*. at 372. An argument that the petitioner's own counsel was ineffective in failing to present that evidence "sounds in substance, not procedure." *Ibid*.

### D. *Runnels* Opinion Issued in August 2018

The Fifth Circuit's most recent opinion on Rule 60/IAC habeas litigation is *Runnels v. Davis*, 2018 U.S. App. LEXIS 22535 (5th Cir. 2018) (unpublished) (concluding that Runnel's Rule 60 motion was properly classified as "a second-or-successive habeas petition"). The most noteworthy aspect of the opinion is found at page 19 where the Eighth Circuit is quoted: "*Williams v. Kelley*, 858 F.3d 464, 471 (8th Cir. 2017) ("Although an assertion of ineffective assistance of [federal] habeas counsel **may be characterized as a _defect in the integrity of the habeas proceeding_**, it ultimately seeks to assert or reassert substantive claims with the assistance of new counsel." (emphasis added).

Ramirez contends that, at the minimum, the gross conduct of Gross qualifies as a defect in the integrity of his habeas proceedings, and he will clear the 'substantive' hurdles to Rule 60 relief for reasons explained below.

### E. Argument and Analysis

The Supreme Court's *Trevino* opinion issued May 28, 2013. 133 S. Ct. 1911 (2013).

Doc. No. 6 is Rodriguez's 2254 petition filed in this Court… on October 9, 2013.

The transcript of this Court's hearing on the motion to stay execution is found at Doc. No. 51. The following exchange occurred:

> THE COURT: All right, and is there a reason you didn't raise a possibility of a – what's being argued now, conflict under *Martinez* and *Trevino* (phonetic), a reason you didn't raise that possibility of a conflict during any point of this litigation?
>
> MR. GROSS: I didn't see that a conflict existed, your Honor.

Doc. No. 51, p. 12.

**\*\*This is patently untrue.\*\***

The Fifth Circuit removed Gross in another (strikingly similar) capital habeas case, *Battaglia v. Stephens*, 824 F.3d 470 (5th Cir. 2016), which issued in March 2016. The Fifth Circuit found that Gross "left . . . a prisoner effectively unrepresented for critical periods of time." In other words, at the minimum, Gross had to have 'seen' the conflict for the balance of the year 2016 when Ramirez's execution was set, and then further on into 2017.

In sum, certain past Rule 60 cases have been unsuccessful when the contention was one of ineffective assistance. But habeas doctrine has long recognized a distinction between IAC and abandonment. *Maples v. Thomas*, 132 S. Ct. 912, 914 (2012) ("A markedly different situation arises, however, when an attorney abandons his client without notice, and thereby occasions the default").

Ramirez contends that his case goes even further based on the intentional misstatements by Gross. At the minimum, a Certificate of Appealability (COA) should issue. *Buck v. Davis*, 137 S. Ct. 759 (2017) ("The Federal Courts of Appeals appear to disagree over whether a COA is needed to appeal the denial of a Rule 60(b) motion. In keeping with the approach adopted by the Fifth Circuit below and by the parties in their briefs, we assume without deciding that a COA is required here").

Mr. Ramirez's appointed state-habeas counsel, Gross, had conflicts of interest after he litigated his state-habeas application. Had he kept abreast of caselaw affecting his appointment, he would have known not to ask this Court to appoint him to litigate Mr. Ramirez's federal-habeas proceedings. But Gross asked for that federal appointment, and he never sought another attorney to review his performance in state habeas.

While Mr. Ramirez's state-habeas application was pending, the Supreme Court issued its opinion in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In *Martinez*, the Court announced a new

equitable exception to the procedural default of IATC claims in federal court, under which the default of a claim is excused if the petitioner shows that the claim is substantial, meaning it has "some merit," and that the claim was not raised in state court because of the ineffective assistance of state-habeas counsel, judged under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Martinez*, 132 S. Ct. at 1318-19. Thus, to benefit under *Martinez*, state prisoners in federal court must allege that state-habeas counsel rendered prejudicially deficient performance, and in most cases, must conduct investigations into trial counsel's performance that state-habeas counsel failed to conduct.

Gross filed a motion for appointment of counsel in federal habeas under 18 U.S.C. § 3599 on October 15, 2012, seven months after *Martinez* came down. Although the motion disclosed that he had represented Mr. Ramirez in state-habeas proceedings, it asked the Court to appoint Gross. The motion did not mention *Martinez* and did not indicate whether Gross disclosed or advised Mr. Ramirez about the potential conflict it created or whether Mr. Ramirez waived the conflict. The Court appointed Gross.

On May 28, 2013, before Ramirez's habeas petition was filed, the Supreme Court decided *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), holding that the equitable exception to procedural default announced in *Martinez* applies to Texas state prisoners in federal-habeas proceedings. Gross filed nothing alerting the Court to the conflict of interest created by the *Martinez-Trevino* decisions at that time. Nor does there appear in the record any indication that Mr. Ramirez ever waived the conflict.

Gross filed a habeas petition on October 9, 2013. The federal petition re-raised the five claims Gross had raised in state habeas and presented no new claims for relief. Gross did not seek investigative services to investigate the existence of procedurally defaulted IATC claims or

his own potential ineffectiveness in defaulting those claims. The petition made no mention of *Martinez* or *Trevino*. The Director also omitted any mention of *Martinez* or *Trevino* in its answer.

In the time between the completion of briefing and this Court's order denying habeas relief, the Supreme Court and the Fifth Circuit both addressed representation questions under 18 U.S.C. § 3599 similar to Mr. Ramirez's. First, on January 20, 2015, the Supreme Court decided in *Christeson v. Roper*, 135 S. Ct. 891 (2015), that "a significant conflict of interest arises" in federal-habeas proceedings – implicating 18 U.S.C. § 3599's substitution provisions – when "an attorney's interest in avoiding damage to [his] own reputation is at odds with his client's strongest argument." *Id*. at 894. In *Christeson*, § 3599 counsel missed the filing deadline for the federal-habeas petition. Counsel did not seek equitable tolling, because, as the Supreme Court notes, "any argument for equitable tolling would be premised on their own malfeasance in failing to file timely the habeas petition." *Id*. at 892-93. Because counsel cannot reasonably be expected to press an argument that "denigrate[s] their own performance," the Supreme Court held that Christeson was entitled to a remand and appointment of substitute, conflict-free counsel to investigate and present an equitable tolling argument.

On March 30, 2015, the Fifth Circuit decided *Mendoza v. Stephens*, 783 F.3d 203 (5th Cir. 2015), and *Speer v. Stephens*, 781 F.3d 784 (5th Cir. 2015), which presented the question whether state prisoners whose federal-habeas counsel represented them in state-habeas proceedings are entitled to substitute or supplemental counsel under § 3599 because "it would be a conflict of interest for [them] to now determine whether [their] state conduct was ineffective" for purposes of vindicating their clients' rights under *Martinez* and *Trevino*. *Speer*, 781 F.3d at 785. In both cases, the Court remanded the cases to the district court and ordered the

appointment of supplemental counsel to investigate whether the petitioner could establish cause and prejudice to overcome the procedural default of any new IATC claims under *Martinez* and *Trevino*.

Judge Owen, filing a separate concurrence in *Mendoza*, found that the appointment of substitute or supplemental counsel was required by the Supreme Court's earlier opinions in *Christeson* and *Martel v. Clair*, 132 S. Ct. 1276, 1286 (2012), in which the Supreme Court held that "even in the absence of [§ 3599], a court would have to ensure that the defendant's statutory right to counsel was satisfied throughout the litigation; for instance, the court would have to appoint new counsel if the first lawyer developed a conflict with . . . the client." *Mendoza*, 783 F.3d at 206-07 (Owen, J., concurring).

In *Speer*, the Fifth Circuit found that § 3599 counsel was conflicted "in the sense that every lawyer charged to examine the performance of counsel is conflicted in that task when the performance is his own." *Ibid*. Because of federal-habeas counsel's conflict, the Court acted in the interests of justice and directed the appointment of supplemental counsel "for the sole purpose of determining whether Speer has additional habeas claims that ought to have been brought." *Id*. at 786.

Despite these developments in the law related to a state capital prisoner's right to conflict-free representation in federal-habeas proceedings in the post-*Martinez* and *Trevino* world, nothing was brought to the attention of the court regarding the conflict of interest created by the decisions or Mr. Ramirez's right to supplemental or substitute counsel to investigate potentially viable defaulted IATC claims. Gross continued to represent Mr. Ramirez on appeal.

But, as discussed below, Gross performed deficiently during Mr. Ramirez's state-habeas proceedings, and his deficient performance prejudiced Mr. Ramirez. Therefore, Mr. Ramirez had

no counsel to investigate his case and present his strongest claims in federal court. Gross deprived Mr. Ramirez of that right.

And Gross attempted to defend his decision to ignore *Christeson*, *Martinez*, *Trevino*, *Speer*, and *Mendoza* during this Court's hearing on Mr. Ramirez's motions to substitute counsel and stay his execution. Gross, still Mr. Ramirez's appointed counsel technically, argued against the motion to stay his execution. That fact bears repeating: Mr. Ramirez's appointed counsel, Michael Gross, argued to this Court that it should deny his client's motion to stay his execution and allow the State of Texas to kill him. This position is such an extreme departure from the agency principles on which attorney-client relationships rest that it constitutes fraud on the Court.

But these examples of Gross' egregious conduct toward his client are not even the most important fraud perpetrated on this Court. Before seeking and accepting appointment in federal court, Gross knew that he had made a major mistake in Mr. Ramirez's case. He knew that his mistake needed to be litigated in federal-habeas review. The Texas Court of Criminal Appeals, in its final order, told Gross that he had made a major mistake when he did not raise an IATC claim that counsel failed to investigate mitigating evidence. *Ex parte John Henry Ramirez*, Cause No. 04-CR-3453-C (Jan. 9, 2012), USDC Dkt. #14 at 12. After *Martinez* and *Trevino*, Gross knew that this major mistake should be litigated in this Court. But he covered up his mistake. He just raised the same claims in the federal petition, without any additional investigation or efforts to excuse the procedural bar to the failure-to-investigate claim, until Mr. Ramirez exhausted his federal review. Then, at the hearing to stay Mr. Ramirez's previous execution date, Gross claimed that he had not missed any issues and that he did not need *Speer*/*Mendoza* counsel. Because the state court had informed Gross – explicitly – that he had missed an important claim,

he knew or should have known that this statement to the Court was not correct. This conduct to cover an obvious mistake, failing to plead a claim that is nearly universally pleaded in state habeas, shows that Gross was misleading the Court to protect his professional reputation, which was hurting after the Fifth Circuit's published opinion in *Battaglia*. And these affirmative steps to protect himself at the expense of his client, Mr. Ramirez, is a fraud on this Court, especially considering that Gross argued for his client to be executed – preemptively ending any review of his performance.

Mr. Ramirez's claims below, therefore, are appropriately analyzed under Rule 60(b).

## II. *Martinez/Trevino* Applies to Excuse Default By Conflicted Federal Habeas Counsel

Even if Ramirez does not conventionally qualify for relief under Rule 60, Ramirez'scase comes to this Court in a unique procedural posture. Gross labored under an ethical conflict that existed throughout the entire time Ramirez's case was litigated in the federal district court, the Fifth Circuit, and the Supreme Court.

Professor Brian R. Means explains the law:

A procedural default by an unrepresented petitioner in a state collateral review proceeding, where there is no federal constitutional right to counsel, for failing to raise a trial-counsel ineffective-assistance-of-counsel claim may constitute "cause" to overcome the default if (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" at all (or, as discussed below, "ineffective" counsel during the state collateral review proceeding); (3) the state collateral review proceeding was the "initial" review proceeding with respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) it is highly unlikely in the typical case that a defendant will have a meaningful opportunity to raise an ineffective-assistance-of-trial-counsel claim on direct appeal.

Brian R. Means, *Postconviction Remedies*, § 24:17.

Ramirez's argument is straightforward: Gross's conflict in the prior federal proceedings in this Court triggers an equitable exception in favor of allowing claims to be heard when

presented by counsel who are not conflicted. *See, e.g., Manning v. Foster*, 224 F.3d 1129, 1134–35 (9th Cir. 2000) ("cause" satisfied if conflict caused the attorney to interfere with the petitioner's right to timely pursue state collateral review); *Jamison v. Lockhart*, 975 F.2d 1377, 1379 (8th Cir. 1992) (cause satisfied where, unbeknownst to the petitioner, counsel's "loyalty was tainted by conflict of interest"); *Hollis v. Davis*, 941 F.2d 1471, 1479 (11th Cir. 1991) (counsel's failure to challenge systematic exclusion of blacks from the jury out of "fear of community reaction or loss of practice" constituted "cause" for the default).

The reality is this: had Gross recognized his obvious conflict, this Court would have appointed *Speer/Mendoza* counsel to look for any other issues. *See Mendoza v. Stephens*, 783 F.3d 203 (5th Cir.2015); *Speer v. Stephens*, 781 F.3d 784 (5th Cir.2015). "To be clear, if a federal habeas petitioner is represented by the same counsel as in state habeas proceedings, and the petitioner requests independent counsel in order to investigate and pursue claims under *Martinez* in a state where the petitioner may only raise ineffective assistance claims in an "initial-review collateral proceeding," qualified and independent counsel is *ethically required.*" *Juniper v. Davis*, 737 F.3d 288, 288 (4th Cir. 2013) (emphasis added).

There is simply no logical reason that Ramirez should be given *Speer/Mendoza* counsel, yet have expirpated out from under him the opportunity to present his claims in an initial-collateral review forum. Kirsty Davis, *Justice Scalia Was Right: "No One Really Believes That* Martinez *Will Remain Limited To Ineffective-Assistance-Of-Trial-Counsel Cases*" 54 Hous. L. Rev. 1349 (Spring 2017) ("The only logical and fair conclusion is to expand *Martinez* to all claims that cannot be raised until post-conviction proceedings").

## III. GROSS DID NOT PRESENT A *WIGGINS* CLAIM IN STATE HABEAS AND WAS UNABLE TO COGNIZE HIS OWN INEFFECTIVENESS IN FEDERAL HABEAS

### A. The Defaulted IATC Claim

The defaulted IATC claim is this: "Trial counsel failed to uncover clearly mitigating evidence."

The Fifth Circuit has clarified the legal standards for the ineffectiveness of state habeas to predicate cause-and-prejudice for procedural default of an IAC claim on the part of trial counsel:

> In *Martinez v. Ryan*, 132 S. Ct. 1309, 1320, 182 L.Ed.2d 272 (2012), the Supreme Court concluded that ineffective assistance by a state habeas attorney may amount to cause where state procedural law requires that an ineffective assistance of trial counsel claim be raised in an initial state habeas application. The Supreme Court extended *Martinez* in *Trevino v. Thaler*, 133 S. Ct. 1911, 185 L.Ed.2d 1044 (2013), to cases in Texas, where state law—on its face—permits an ineffective assistance of trial counsel claim to be raised on direct appeal, but in effect makes it virtually impossible to do so. To meet *Martinez's* "cause" exception, the applicant must show that the representation provided by his state habeas counsel fell below the standards established in *Strickland* and that his underlying ineffective assistance of trial counsel claim "is a substantial one, which is to say . . . that the claim has some merit." *Martinez*, 132 S. Ct. at 1318.

*Allen v. Stephens*, 805 F.3d 617, 626 (5th Cir. 2015).

The deficient performance by Gross in state habeas is manifest: He never raised a claim that trial counsel failed to investigate mitigation evidence adequately.

Below is Paragraph 55 in the state court's FFCL signed January 2012:

> 55. The Court finds that Applicant has not raised a complaint in his present application that his trial attorneys were ineffective for failing to investigate mitigation evidence, but has instead limited his ground on mitigation evidence to a complaint that, "counsel were ineffective in failing to recognize that John was unable and incompetent to direct counsel to not call any further witnesses during the punishment phase of the trial," and that "Defense counsel's performance was deficient in failing to present this mitigation testimony." (Application pp. 113-14)

This aspect of the FFCL is somewhat in conflict with the observation in Paragraphs 83 and 84:

> 83. The Court finds that Ramirez has failed to prove by a preponderance of the evidence that his trial attorneys' investigation and development of mitigation evidence was deficient in any way. Specifically, the Court finds that Ramirez's trial attorneys questioned a sufficient number of witnesses and made sufficient preparation for them to testify at the punishment hearing in order to present a convincing mitigation case and to show Ramirez's background and social history, and that the additional witnesses suggested by Ramirez in the present writ proceeding would not have been able to add any significant additional details.

> 84. Alternatively, the Court finds that any deficient performance in the investigation and development of a mitigation case by Ramirez's trial attorneys did not cause prejudice, and specifically that there is not a probability sufficient to undermine confidence in the outcome that, but for this complained-about deficiency, the result of the proceeding would have been different, both in light of the mitigation evidence that was already available to the defense and in light of Ramirez's own decision not to present a mitigation defense at trial or for his attorneys to argue against the imposition of the death penalty.

The Court of Criminal Appeals adopted that findings without alteration. *Ex parte Ramirez*, 2012 Tex. Crim. App. Unpub. LEXIS 1080 (Tex. Crim. App. 2012) (unpublished). Instead, Gross presented an IATC claim with six subparts. The only subpart that actually included extra-record evidence that Gross had to investigate was one claim that trial counsel failed to present some mitigating evidence. Gross presented limited affidavits from only some of Mr. Ramirez's family to support his argument that Mr. Ramirez satisfied *Strickland* prejudice, but these affidavits were from witnesses available at trial. None of the affidavits were from people outside Mr. Ramirez's family.

The Texas Court of Criminal Appeals' finding of fact that Gross never presented an IATC claim for failing to investigate mitigation evidence "shall be presumed to be correct" because it was "adjudicated on the merits in State court proceedings." *See* 28 U.S.C. § 2254(d), (e)(1).

**B.      Deficient Performance by Ramirez's Trial Counsel**

Trial counsel must reasonably investigate to find mitigation evidence. The Supreme Court is clear that effective assistance requires counsel to conduct a reasonable "investigation into the prosecution's case and into various defense strategies," because lack of pretrial preparation puts at risk the defendant's right to "an ample opportunity to meet the case of the prosecution." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Failure to do so is "objectively unreasonable." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006). This investigation principle applies to the sentencing phase of trials too. *Wiggins v. Smith*, 539 U.S. 510, 526 (2003).

At the time of Mr. Ramirez's trial, his attorneys' obligations were governed by the ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 2003 (the "Guidelines") and the ABA Standards for Criminal Justice (3d Ed. 1993) (the "Standards"). "Those Guidelines applied the clear requirements for investigation set forth in the earlier Standards to death penalty cases and imposed . . . similarly forceful directive[s]." *Rompilla v. Beard*, 545 U.S. 374, 387 n.7 (2005) (referring to 1989 Standards). Under the Guidelines, counsel has an obligation to conduct at every stage a "thorough and independent investigation ( ) relating to the issues of both guilt and penalty." Guidelines 10.7(A). Similarly, the Standards imposed an affirmative obligation "to conduct a prompt investigation of the circumstances of the case and to explore *all avenues* leading to facts relevant to the merits of the case." Standards 4-4.1 (emphasis added). Most significantly, "[t]he duty to investigate exists regardless of the

accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty." *Ibid*.

Once capital trial counsel completes the necessary pretrial investigation, he must then formulate a defense theory "that will be effective in connection with both guilt and penalty . . . ." Guideline 10.10.1 (2003); *accord* Guideline 11.7.1 (1989). Clearly established Federal law dictates that defense counsel must conduct a *reasonable investigation* or, at a minimum, to make a reasonable decision that makes specific investigation unnecessary. *Strickland*, 466 U.S. at 691; *accord Sonnier v. Quarterman*, 476 F.3d 349, 358 (5th Cir. 2007). Trial counsel may not limit the scope of their investigation unless it determined that further investigation would be "counterproductive or fruitless." *Lewis v. Dretke*, 355 F.3d 364, 367, (5th Cir. 2003); *accord Smith v. Dretke*, 422 F.3d 269, 280 (5th Cir. 2005).

Here, neither trial counsel nor Gross reasonably investigated Mr. Ramirez's mental state and traumatic history. Had they done so, they would have uncovered a terrible combination of serious mental illness and childhood trauma as displayed in the BBC documentary. Ex. 1. This evidence, placed in proper context by expert medical professionals, would have resulted in a homicide conviction that was less than capital and, even if convicted of capital murder, a life sentence.

### C. Pablo Castro's son, Aaron Castro, Would Have Asked the Jury To Impose A Life Sentence Had He Known That Ramirez Had A Son

This Court's Memorandum Opinion was clear: "Ramirez has not identified any witness other than family members who could provide testimony exceeding trial counsel's opening argument." Doc. No. 34, p. 45.

But this statement is not true, in the sense that Gross could have developed evidence to gainsay it, and this evidence would have easily been available to trial counsel. The BBC

produced a video in 2017 in which they interviewed the victim's family. The video is available here: https://www.bbc.co.uk/programmes/p060lxmz. *See also* Ex. 1.

At 3:35, Aaron Castro says, "I would not want that hate cycle to continue" because he would not support the death penalty be imposed on Ramirez because he now has an infant son.

### D. Mitigation Evidence of Mr. Ramirez's Horrific Childhood Trauma

The BBC documentary also presents shocking testimony from Ramirez's mother, Priscilla Martinez, about the violence she endured during Ramirez's childhood. This is far more detail than that which was presented in her affidavit (Doc. No. 7, p. 33):

> About a month after Joe and I had separated, following a party that I had attended Joe apparently was hiding outside my apartment and as I went to get the door unlocked and get inside he attacked me. He had a knife that he was attempting to cut me with. We had a struggle right there in the doorway and right inside watching was John who was about 9 years old at the time and his brother Alex who was about 3. I got cut eight times and had to go to the hospital to get stitched up. I know that they were terrified to see me being cut up right there in front of them by someone who had been kind of like a dad to them. The police came and Joe got arrested for assaulting me.

Moreover, since the trial counsel only met with Priscilla Martinez once, it appears that they never ascertained this mitigating information from her. *See* Dkt #7, 30.

It is of no moment that Pricilla Martinez was arrested on a warrant when she came to court. Surely, every day in this country, an inmate comes to court to testify. Trial counsel could have easily called the Booking Department to see how quickly Pricilla Martinez could have been brought across the street to the Nueces County Courthouse to testify at this murder trial.

### E. Additional Authority

Ramirez adduces the following line of cases to support his contention of deficient performance: *Goodman v. Bertrand*, 467 F.3d 1022, 1029 (7th Cir. 2006) (holding that trial

counsel was ineffective for failing to call witnesses who counsel knew could present evidence that the client was not the person who committed the crime, and stating that such could not be considered a tactical decision.); *Mathews v. Abramajtys*, 319 F.3d 780 (6th Cir. 2003) (upholding district court's grant of writ of habeas corpus, focusing on trial counsels' failure to present potential alibi witness); *Pavel v. Hollins*, 261 F.3d 210 (2d Cir. 2001) (holding that trial counsel's decision not to call two important fact witnesses could not be seen as plausible strategic decision making or adequate pretrial investigation where counsel knew they would provide useful non-cumulative trial testimony).

### F.     *Strickland*'s Second Prong: Prejudice Analysis

Denying a § 3599(f) funding request in the context of a *Martinez/Trevino* claim, the Fifth Circuit recently held that investigation into what family member witnesses would have said had they been called **supported** a finding of prejudice under the second prong of *Strickland*, but denied relief because the trial lawyers were found not to have performed deficiently because they had not had prior indication that these witnesses would not voluntarily attend:

> Allen seeks to investigate the testimony his family members would have given if they had been subpoenaed. **This testimony might possibly lend support to Allen's prejudice argument . . .**

*Allen v. Stephens*, 805 F.3d 617, 638 (5th Cir. 2015) (emphasis added).

In Ramirez's case, it was surely known, or easily knowable, that Pricilla Martinez had an outstanding warrant for her arrest. Had trial counsel taken steps to secure her attendance, Ramirez would not have discontinued the presentation of mitigating evidence and mother's vital testimony would have been considered by the jury militating against the imposition of the death penalty.

## CONCLUSION AND PRAYER FOR RELIEF

In conclusion, this court should vacate the relevant section of the 2015 order for the reasons stated herein.

Alteratnively, this Court should grant a COA on the denial of Rule 60 relief.

In the second alternative, this Court should transfer the matter to the Fifth Circuit for treatment as a successor writ.

Respectfully submitted,

LAW OFFICE OF SETH KRETZER
440 Louisiana Street; Suite 1440
Houston, TX 77002
DIRECT: 713/775-3050
seth@kretzerfirm.com

*/s/ Gregory W. Gardner*
Gregory W. Gardner
P.O. Box 2366
Boulder, CO 80306
Direct: 303/990-5910
ggardner@gwgardnerlaw.com

_____
Seth Kretzer

## CERTIFICATE OF SERVICE

I certify that a copy of this document was filed on ECF on this 20th day of August 2018.

_____
Seth Kretzer

## CERTIFICATE OF CONFERENCE

I certify that on this 20th day of August 2018, I comferred with AAG Jennifer Morris who is *OPPOSED*.

_____
Seth Kretzer