UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN H RAMIREZ, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:12-CV-410 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## ORDER

John Henry Ramirez is an inmate on Texas's death row. After exhausting state appellate and habeas remedies, Ramirez filed a federal petition for habeas corpus relief in 2013. This Court denied Ramirez's federal habeas petition in 2015. Ramirez now moves for relief from judgment under Federal Rule of Civil Procedure 60(b). D.E. 78. The Court DENIES Ramirez's motion for the reasons discussed below.

## I.  BACKGROUND

Ramirez moves for relief from judgment under Rule 60(b)(6), known as the "catchall provision." *Solis v. Dretke*, 436 F. App'x 303, 306 (5th Cir. 2011). Ramirez argues that the Court should reopen judgment because Michael C. Gross, the attorney who represented him on state habeas review, also represented him in his initial round of federal habeas proceedings. Ramirez contends that, because the performance of state habeas counsel may forgive some procedural obstacles to habeas review under *Martinez v. Ryan*, 566 U.S. 1 (2012), Gross operated under a conflict of interest and could not argue that he had performed deficiently in state court. Ramirez argues that, "at the

minimum, Gross's conduct qualifies as [] a defect in the integrity of his habeas proceedings" which requires reopening judgment under Rule 60(b). D.E. 78, p.4. Ramirez's Rule 60(b) motion only identifies one claim that Gross's alleged conflict prevented him from advancing: "Trial counsel failed to uncover clearly mitigating evidence" in violation of *Strickland v. Washington*, 466 U.S. 668, 687 (1984) and *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). D.E. 78, p.10.

Adjudicating Ramirez's Rule 60(b) motion requires an extensive review of his trial proceedings, the issues Gross raised in state and federal court, and the arguments Gross allegedly failed to raise.

### A. Trial

In 2004, Ramirez killed Pablo Castro by stabbing him twenty-nine times during an attempted robbery. The State of Texas charged Ramirez with capital murder. Clerk's Record, p.2; Tex. Penal Code § 19.03(a)(2). Ramirez stood trial in the 94th Judicial District Court for Nueces County, Texas.[1]

At the heart of the matter now before this Court, Ramirez challenges his trial counsel's efforts to secure a life sentence. After the jury convicted Ramirez of capital murder, the trial court held the punishment phase of the trial. The State called numerous witnesses to describe Ramirez's history of lawlessness. The defense began its punishment case by calling Ramirez's father to provide insight into his upbringing.

---

[1] The trial court appointed Edward F. Garza and John Grant Jones to represent Ramirez at trial. The Court will refer to Ramirez's trial attorneys collectively as "trial counsel."

When court resumed the next morning, however, trial counsel announced that Ramirez had ordered them not to call additional witnesses.

Ramirez's choice to end the punishment case was not rashly taken. Ramirez explained that he had long before decided to limit his mitigation defense because he wanted to spare his family from testifying about traumatic events and he did not want to spend the rest of his life in prison. Once the trial court assured that Ramirez had made his decision competently and voluntarily, the defense ended its punishment-phase case. Under Ramirez's direction, the defense's closing argument consisted of reading a single verse from the Bible.

On December 8, 2008, Ramirez was sentenced to death. That same day, the trial court appointed Gross to represent Ramirez in his state habeas proceedings.

**B.      State Post-Conviction Review**

Gross hired a mitigation investigator and mental-health expert to assist in preparing a state habeas application. On April 11, 2011, Gross filed an application for state habeas corpus relief on Ramirez's behalf. The state habeas application raised six claims and spanned 117 pages. Importantly, the state habeas application said that trial counsel "fail[ed] to properly investigate and discover mitigating evidence" and cited *Wiggins v. Smith*, 539 U.S. 362 (2003). State Habeas Record at 107. Ramirez argued that trial counsel should have called witnesses to describe his turbulent, abusive, and loveless childhood. Ramirez supported his claim with several affidavits, including one from his mother. State Habeas Record at 150-57. The state habeas court summarized the content of the affidavits as "traumatic events that occurred during Ramirez's childhood,

including his parent's divorce, abandonment by his father, the tough neighborhood that he grew up in, abusive conduct by his mother, seeing his mother being stabbed by one of her boyfriends, and being shot himself . . . ." State Habeas Record at 534. Acknowledging Ramirez's choice to end the punishment case, the state habeas application argued that trial counsel "were ineffective in failing to recognize that [he] was unable and incompetent to direct counsel to not call any further witnesses . . . ." State Habeas Record at 117.

The state habeas court held a three-day hearing in which several witnesses, including both trial attorneys, testified. On January 9, 2012, the state habeas court entered findings of fact and conclusions of law and recommended that the Texas Court of Criminal Appeals deny habeas relief.[2] The state habeas court provided three reasons for denying Ramirez's ineffective-assistance claim: (1) Ramirez instructed his attorneys to end the mitigation case; (2) trial counsel provided competent representation in handling mitigating evidence; and (3) alleged deficiencies in trial counsel's representation did not result in a reasonable probability of a different result.

### C. Initial Round of Federal Review

The circumstances that give rise to Ramirez's Rule 60(b) motion began in March 2012, when the Supreme Court decided in *Martinez v. Ryan*, 566 U.S. 1 (2012), that a state habeas attorney's representation can overcome a federal procedural bar. Prior to *Martinez*, an attorney's negligence in a postconviction proceeding could not forgive the

---

[2]   The state habeas court found that Ramirez defaulted consideration of some claims by not making a contemporaneous objection at trial, which resulted in a federal procedural bar when Ramirez reurged the claims on federal review. D.E. 34 at 9-10. Ramirez does not challenge that procedural ruling in his Rule 60(b) motion.

default of federal habeas claims. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). *Martinez* carved out a "narrow exception" that would allow federal courts to review an ineffective-assistance-of-trial-counsel claim that a state habeas attorney had failed to litigate. *Martinez*, 566 U.S. at 422.

The Fifth Circuit, however, muted the influence of *Martinez* by holding that it did not apply to capital habeas cases arising out of Texas courts. Starting with *Ibarra v. Thaler*, 687 F.3d 222, 227 (5th Cir. 2012), the Fifth Circuit issued a series of decisions distinguishing Texas's habeas review from that involved in *Martinez*. *See Foster v. Thaler*, 481 F. App'x 229 (5th Cir. 2012); *Newbury v. Thaler*, 476 F. App'x 336 (5th Cir. 2012); *Ayestas v. Thaler*, 475 F. App'x 518 (5th Cir. 2012); *Gates v. Thaler*, 476 F. App'x 336 (5th Cir. 2012).

Accordingly, on October 19, 2012, when this Court appointed Gross to represent Ramirez "throughout his federal habeas proceedings," D.E. 2, nothing in law or procedure discouraged a Texas state habeas attorney from continuing to represent his client on federal habeas review. In fact, under the heading "Continuity of Representation," the CJA Guide to Judiciary Policy stated (and still states) that "in the interest of justice and judicial and fiscal economy, unless precluded by a conflict of interest, presiding judicial officers are urged to continue the appointment of state post-conviction counsel, if qualified . . . when the case enters the federal system." 7A Guide to Judiciary Policy § 620.70.

On May 28, 2013, however, the Supreme Court decided in *Trevino v. Thaler*, 569 U.S. 413 (2013), that *Martinez* applies to Texas cases. Gross never argued that *Martinez* or *Trevino* raised any concerns about Ramirez's representation.

On October 6, 2013, Ramirez filed a federal habeas petition raising five grounds for relief. D.E. 6. Ramirez's federal petition included the same ineffective-assistance-of-trial-counsel arguments that he had exhausted in state court. Most relevant to the issues now before the Court, Ramirez again argued that trial counsel was ineffective in preparing and presenting a case for mitigation. Ramirez's federal petition relied on the same basic facts and evidence as he did in state court.

In 2015, this Court denied Ramirez's federal petition for a writ of habeas corpus. The Court considered Ramirez's *Wiggins* claim on the merits and, applying the deferential standard found in the Anti-Terrorism and Effective Death Penalty Act, found that the state habeas court's decision was not contrary to, or an unreasonable application of, federal law. D.E. 34, pp.30-46.

Gross represented Ramirez in the subsequent appellate proceedings. The Fifth Circuit refused to certify any issue for appellate review. *Ramirez v. Stephens*, 641 F. App'x 312 (5th Cir. 2016). The Supreme Court denied Ramirez's subsequent motion for a petition for a writ of certiorari.

### D.    Appointment of New Counsel

The State of Texas scheduled Ramirez's execution for February 2, 2017. On January 27, 2017, Gregory W. Gardner filed two motions on Ramirez's behalf: a motion to stay his execution, D.E. 44, and a motion for new counsel, D.E. 43. Ramirez based his

motion to stay on two arguments: (1) Gross's representation created an inherent conflict under *Martinez* that prevented the litigation of potential claims, and (2) Gross abandoned him by not filing a clemency petition.

As to the first argument, the Court held that the record was "inadequate to decide whether *Martinez* may allow Ramirez to raise viable new claims in a Rule 60(b) motion, a successive federal habeas proceeding, or a successive state action." D.E. 48, p.4. The Court, however, stayed Ramirez's execution based on his second argument: Gross failed to represent his client as the execution date neared.[3] Accordingly, the Court substituted counsel and stayed Ramirez's execution. The Fifth Circuit affirmed. *Ramirez v. Davis*, 675 F. App'x 478, 479 (5th Cir. 2017).

### E.    Rule 60(b) Motion

On August 20, 2018, Ramirez filed an Opposed Motion for Relief from Judgment Pursuant to Federal Rules of Civil Procedure 60(b). D.E. 74. Ramirez subsequently amended his motion. D.E. 78.

According to Ramirez, Gross "had conflicts of interest after he litigated his state-habeas application. Had he kept abreast of caselaw affecting his appointment, he would have known not to ask this Court to appoint him to litigate Mr. Ramirez's federal habeas proceedings." D.E. 78, p. 5. Ramirez argues that this Court should have appointed conflict-free counsel early in the habeas process, thus allowing the development of claims

---

[3]  Ramirez had shown an "express intent that Gross remove himself from the case," yet "Gross did not move to substitute counsel or notify the court of a needed change in representation." D.E. 48, p.7. This Court held that: "Gross knew that Ramirez wanted someone to file a clemency petition, but at that point effectively stopped acting on Ramirez's behalf. Gross had a duty to either (1) inform the Court of his client's wishes and seek the substitution of new counsel or (2) ensure that a clemency petition was filed on his client's behalf. Gross did neither. Gross' inaction prevented judicial consideration of whether the circumstances required the substitution of counsel." D.E. 48, pp.7-8.

without requiring Gross to argue his own incompetence.  D.E. 78, p. 10.  "Ramirez's argument is straightforward: Gross's conflict in the prior federal proceedings in this Court triggers an equitable exception in favor of allowing claims to be heard when presented by counsel who are not conflicted."  D.E. 78, p. 9.

According to Ramirez, "[t]he deficient performance by Gross in state habeas is manifest: he did not adequately present a claim that trial counsel failed to *investigate* mitigation evidence adequately."  D.E. 78 at 11 (emphasis added).  Ramirez supports this argument with a BBC documentary about his case.  Ramirez highlights two interviews from the video that contain information trial counsel allegedly failed to develop: (1) "a terrible combination of serious mental illness and childhood trauma" as described by his mother, Priscilla Martinez and (2) comments from the victim's son that he wanted Ramirez to receive a life sentence.  D.E. 78, pp.14-15.  Ramirez relies only on the BBC documentary; he has not supported the allegations in his Rule 60(b) motion with affidavits from proposed witnesses.

Respondent has filed an opposition to Ramirez's Rule 60(b) motion.  D.E. 79.  Respondent argues that Ramirez's motion is, effectively, a successive habeas petition that this Court lacks jurisdiction to consider.  Alternatively, Respondent argues that the Rule 60(b) motion is untimely, does not demonstrate extraordinary circumstances, is unreviewable, and lacks merit.  Ramirez has not filed any reply.

## II.  Procedural Requirements of Rule 60(b)

Before turning to the question of whether Ramirez's pleading is actually a successive habeas petition, the Court finds that he has not complied with procedural

requirements for filing a Rule 60(b) motion. "To succeed on a Rule 60(b) motion, the movant must show: (1) that the motion [was] made within a reasonable time; and (2) extraordinary circumstances exist that justify the reopening of a final judgment." *In re Edwards*, 865 F.3d 197, 203 (5th Cir. 2017). As discussed below, Ramirez's Rule 60(b) motion (1) was not filed in a timely manner, and (2) does not present extraordinary circumstances justifying post-judgment relief.

### A.    Timeliness

Respondent argues that to the extent Ramirez has filed a proper Rule 60(b) motion, he did not do so in a timely manner. A party must file a Rule 60(b) motion "within a reasonable time" unless good cause is shown. Fed. R. Civ. P. 60(c)(1).[4] Rule 60(b) does not set a fixed time as "reasonable," but instead looks at the facts and circumstances of each case. *See Associated Marine Equip, LLC v. Jones*, 407 F. App'x 815, 816 (5th Cir. 2011). The basis for Ramirez's Rule 60(b) -- the alleged conflict of interest created by Gross's appointment in federal court -- arose when the Supreme Court decided *Trevino* in 2013. *See Clark v. Davis*, 850 F.3d 770, 781 (5th Cir. 2017). Ramirez's Rule 60(b), filed years later, raises questions about timeliness.

The Fifth Circuit's reasoning in *In re Paredes*, 587 F. App'x 805 (2014), shows that Ramirez did not raise his *Martinez* arguments in a timely manner. Like in the instant proceedings, Gross represented the inmate in *Paredes* on both state and federal review.

---

[4]  If a party moves for relief under 60(b)(1) through (3), he must file a motion "no more than a year after the entry of the judgment." Fed. R. Civ. P. 60(c)(1); *see also Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) ("Rule 60(b) contains its own limitations, such as the requirement that the motion be made within a reasonable time and the more specific 1-year deadline for asserting three of the most open-ended grounds of relief (excusable neglect, newly discovered evidence, and fraud)") (quotation omitted). Ramirez relies on Rule 60(b)(6)'s catch-all provision. D.E. 78, p.2.

The district court rendered judgment in *Paredes* in 2007. Paredes contacted conflict-free counsel in June 2014 and, through his new attorney, filed a Rule 60(b)(6) motion in October 2014, arguing that Gross's representation had created a conflict of interest. The Fifth Circuit found that Paredes's Rule 60(b) motion was not timely. The Fifth Circuit held that the timeliness of Paredes's motion did not depend on the date when new counsel represented him, but at a minimum "when *Trevino* issued." *Id*. at 825. Because Paredes filed his Rule 60(b) motion 17 months after *Trevino*, it was not timely.

The Fifth Circuit reached a similar conclusion in *Clark,* 850 F.3d at 770, another case in which the same attorney represented the inmate on state and federal habeas review. In *Clark*, however, the district court had not entered judgment when the Supreme Court handed down *Martinez*. The inmate in *Clark* argued that "the relevant date for determining timeliness of his Rule 60(b)(6) motion is the date on which the federal district court permitted new counsel to be substituted . . . ." *Id*. at 782. The Fifth Circuit, however, reiterated its holding from *Paredes*: "the touchstone for Clark's Rule 60(b) motion, which is that [the attorney] had a conflict of interest, came into existence on May 28, 2013, the date of the *Trevino* decision." *Id*. at 781. The inmate in *Clark* did not request the appointment of conflict-free counsel until a year after *Trevino*, making his subsequent Rule 60(b)(6) motion untimely. *See id*. at 781-83; *see also Pruett v. Stephens*, 608 F. App'x 182, 187 (5th Cir. 2015) (finding untimely a Rule 60(b)(6) motion filed 19 months after *Trevino*).

The Fifth Circuit's analysis in *Paredes*, *Clark*, and *Pruett* shows that Ramirez did not file his Rule 60(b) motion in a timely manner. Even though Gross remained his

attorney, Ramirez "had a basis for the contention that Gross had a conflict of interest" when *Trevino* was decided in 2013. *Paredes*, 587 F. App'x at 824. That Ramirez himself may not have known about *Trevino* is of no moment. The Fifth Circuit has held that "unawareness of the *Trevino* decision could be described, at best, as mistake, inadvertence, or excusable neglect in keeping apprised of the law that pertained to his state conviction." *Id*. Ramirez, however, did not raise the *Martinez/Trevino* issue before judgment or on appeal, waiting instead to advance the concern days before an execution date.

Even after the Court appointed conflict-free counsel on January 31, 2017, D.E. 48, Ramirez still waited until August 20, 2018, to file a Rule 60(b) motion. D.E. 74.[5] Ramirez bases his Rule 60(b) motion on Gross's conflict of interest that allegedly kept him from raising a *Wiggins* claim, and specifically one including information contained in a BBC documentary produced in 2017. In arguing for the appointment of conflict-free counsel in early 2017, Ramirez emphasized the potential conflict posed by Gross's representation. D.E. 43, 44. Ramirez, however, still waited 18 months to file his Rule 60(b) motion in August 2018. Ramirez has not shown why he did not have access to information contained in the BBC video earlier or why he did not interview proposed witnesses after the appointment of conflict-free counsel. Ramirez unreasonably delayed in filing his Rule 60(b) motion.

---

[5] The parties filed a joint motion for a scheduling order that would allow Ramirez to file a "supplemental brief" after the time for filing a Rule 60(b) motion had expired. D.E. 70.

Because Ramirez has not provided any explanation for why he delayed seeking post-judgement relief, the Court finds that his 60(b) motion is untimely. *See Edwards*, 865 F.3d at 209.

## B. Extraordinary Circumstances

Even though a court may reopen judgment for "any other reason that justifies relief," Federal Rule of Civil Procedure 60(b)(6), an inmate must still show "extraordinary circumstances," which "rarely occur in the habeas context." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). Ramirez does not describe what extraordinary circumstances justify Rule 60(b) relief, but he presumably relies on the alleged conflict in Gross's representation caused by *Martinez*. The Fifth Circuit, however, has repeatedly held that "the change in decisional law effectuated by *Martinez* . . . is insufficient, on its own, to demonstrate 'extraordinary circumstances.'" *Haynes v. Davis*, 733 Fed. App'x. 766, 769 (5th Cir. 2018), *petition for cert. filed* (Oct. 29, 2018) (No. 18-6471); *see also Beatty v. Davis*, ___ F. App'x ___, 2018 WL 5920498, at *5 (5th Cir. Nov. 12, 2018); *Raby v. Davis*, 907 F.3d 880 (5th Cir. 2018); *Edwards*, 865 F.3d at 208; *Pruett*, 608 F. App'x at 185; *Hall v. Stephens*, 579 F. App'x 282, 283 (5th Cir. 2014); *Paredes*, 587 F. App'x at 825; *Diaz v. Stephens*, 731 F.3d 370, 375-76 (5th Cir. 2013); *Adams v. Thaler*, 679 F.3d 312, 319 (5th Cir. 2012); *Hernandez v. Thaler*, 630 F.3d 420, 430 (5th Cir. 2011). Further, the Fifth Circuit has rejected the related argument that extraordinary circumstances result from a potential conflict posed by a continuity in representation. *See Beatty*, 2018 WL 5920498, at *5 ("*Martinez* and *Trevino* did not create a new right to

conflict-free counsel on collateral review; they provide only remedial relief to procedural bars standing in the way of presenting defaulted claims in federal courts.").

Extraordinary circumstances are particularly absent in this case because Ramirez has already received all the relief he has requested under *Martinez*. This Court has already considered the merits of a *Wiggins* claim. The *Wiggins* claim Ramirez proposes in his Rule 60(b) motion does not fundamentally differ from much of that Gross raised in his initial petition.[6] Moreover, Ramirez's Rule 60(b) motion does not take into account a fatal flaw in his *Wiggins* claim: Ramirez directed his attorneys to end the presentation of mitigating evidence. Ramirez has not identified anything in potential trial testimony similar to the information from the BBC documentary that would have changed his decision. In sum, Ramirez has not shown that the circumstances are so extraordinary to warrant reopening the judgment.

## III. SUCCESSIVE PETITION

Respondent also argues that Ramirez's Rule 60(b) motion is actually a successive federal habeas petition. "Because of the comparative leniency of Rule 60(b), petitioners sometimes attempt to file what are in fact second or successive habeas petitions under the guise of Rule 60(b) motions." *Edwards*, 865 F.3d at 203. In *Gonzalez v. Crosby*, the

---

[6] The Supreme Court in *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), made it clear that federal habeas review "focuses on what a state court knew and did." "The import of *Pinholster* is clear: because [an inmate's] claims have already been adjudicated on the merits, § 2254 limits [federal] review to the record that was before the state court." *Lewis v. Thaler*, 701 F.3d 783, 791 (5th Cir. 2012). The Fifth Circuit has held that "*Martinez* does not apply to claims that were fully adjudicated on the merits by the state habeas court because those claims are, by definition, not procedurally defaulted." *Escamilla v. Stephens*, 749 F.3d 380, 394 (5th Cir. 2014); *see also Villanueva v. Stephens*, 619 F. App'x 269, 276 (5th Cir. 2015); *Allen v. Stephens*, 619 F. App'x 280, 290 (5th Cir. 2015). Once a state habeas court has denied a claim on the merits, *Martinez* "may not function as an exception to *Pinholster*'s rule that bars a federal habeas court from considering evidence not presented to the state habeas court." *Escamilla*, 749 F.3d at 395. Simply, "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000). Under *Pinholster*, the Court cannot consider new evidence Ramirez's Rule 60(b) motion suggests he may develop.

Supreme Court stated that Rule 60(b) motions cannot "impermissibly circumvent the requirement that a successive habeas petition be precertified by the court of appeals as falling within an exception to the successive-petition bar."  545 U.S. at 532.[7]

"To bring a proper Rule 60(b) claim in a habeas proceeding, a movant must show a non-merits-based defect in the district court's earlier decision on the federal habeas petition."  *Runnels v. Davis*, ___ F. App'x ___, 2018 WL 3913662, at *6 (5th Cir. 2018) (quotation omitted).  A valid Rule 60(b) motion generally "alleges 'that a previous ruling which precluded a merits determination was in error -- for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar.'"  *Edwards*, 865 F.3d at 203 (quoting *Gonzalez*, 545 U.S. at 532 n.4).  A Rule 60(b) motion is also proper when it "challenges 'not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings' . . . . "  *In re Coleman*, 768 F.3d 367, 371 (5th Cir. 2014) (quoting *Gonzalez*, 545 U.S. at 532). On the other hand, a successive petition generally: "(1) presents a new habeas claim (an 'asserted basis for relief from a state court's judgment of conviction'), or (2) 'attacks the federal court's previous resolution of a claim on the merits.'"  *Edwards*, 865 F.3d at 203 (quoting *Gonzalez*, 545 U.S. at 530). A Rule 60(b) motion that alleges omissions on the part of federal habeas counsel "ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably," and is thus properly recharacterized as a successive petition. *Runnels*, 2018 WL 3913662, at *6.

---

[7]  A district court lacks jurisdiction to consider a successive habeas petition until a circuit court authorizes successive proceedings. *See* 28 U.S.C. § 2244(b)(3)(A).

Gross raised a *Wiggins* claim in his initial federal petition. The initial federal petition argued that "defense attorney's performance, in failing to properly investigate and discover mitigation evidence in a capital case, falls below an objective standard of reasonableness and thereby prejudices the defense." D.E. 6, p. 115. The initial petition also said that trial counsel did not "properly investigate[] the case" and should have "called . . . witnesses to testify," including Ramirez's mother. D.E. 6, p.117. This Court understood Ramirez's claim to be that "trial counsel made inadequate efforts to investigate and prepare evidence to militate for a life sentence." D.E. 34, p.30.

Ramirez's Rule 60(b) motion argues that trial counsel did not "reasonably investigate[] Mr. Ramirez's mental state and traumatic history" and thus did not call two specific witnesses. D.E. 78, p.14. At its core, this is the same claim Gross included in the initial federal petition.[8] Ramirez may suggest that he can develop new evidence to

---

[8] Seeking to distinguish the arguments in his Rule 60(b) motion from those raised earlier, Ramirez contends that Gross never advanced a *Wiggins* claim based on the *investigation* of mitigating evidence. D.E. 78, p. 11. Ramirez bases this argument on a single finding of fact made by the lower habeas court: "The Court finds that Ramirez has not raised a complaint in his present application that his trial attorneys were ineffective for failing to investigate mitigating evidence . . . ." Ramirez, however, also concedes that the lower court's findings are contradictory on whether Gross raised a claim challenging the investigation of mitigating evidence. This is the first time that either party has disputed whether Gross exhausted a *Wiggins* claim based on the investigation of mitigating evidence. The habeas application filed by Gross repeatedly referenced deficiencies in counsel's investigation of evidence. State Habeas Record at 107-19. Gross premised the proposed findings and conclusions on counsel's failure to investigate and present mitigating evidence. State Habeas Record at 419-29. Importantly, in a state habeas hearing, Gross disputed the prosecution's argument that he had not raised a failure-to-investigate claim. When the State argued that the habeas application "was [not] premised on failure to develop mitigating evidence," but that the "whole crux of it was failure to present mitigating evidence after the client made a decision," Gross argued:

> My ground on the writ is failure to present . . . mitigating evidence and . . . it's a *Wiggins* issue, and *Wiggins* says you have to do a mitigation investigation and present mitigating evidence, and our ground is failure to present mitigating evidence under *Wiggins* and it's progeny .. . . And *Wiggins* says you have to do a mitigation investigation, you have to be ready . . . for mitigation before trial in order to put on mitigation properly.

State Writ Hearing at 21-22. Even though the lower habeas court eventually signed, without alteration, the State's proposed findings that contradictorily said that Gross did not include a *Wiggins* claim, the record amply shows that Gross exhausted that claim in state court. Gross included the same claim, using the same evidence, in the federal petition.

support a *Wiggins* claim, but "a motion that seeks leave to present newly discovered evidence in support of a claim previously 'denied is, if not in substance a habeas corpus application, at least similar enough that failing to subject it to the same requirements would be inconsistent with the statute.'" *Runnels*, 2018 WL 3913662, at *6 (quoting *Gonzalez*, 545 U.S. at 531 (citation and internal quotation marks omitted)); *see also Coleman*, 768 F.3d at 373 ("Coleman raises essentially the same claim here, albeit with additional affidavits, and thus her claim is barred as previously raised under section 2244(b)(1).").

Even to the extent that Ramirez appears to argue that the claim raised in his Rule 60(b) motion is different from that advanced in state court or in his federal petition, it is still a successive petition. A "Rule 60(b) motion seek[ing] to re-open the proceedings for the purpose of adding new claims . . . is the definition of a successive claim. *Edwards*, 865 F.3d at 204-05; *see also Runnels*, 2018 WL 3913662, at *6; *Tamayo v. Stephens*, 740 F.3d 986, 990 (5th Cir. 2014).

Ramirez argues that "Gross's conduct qualifies as [] a defect in the integrity of his habeas proceedings" so his motion falls outside of the Antiterrorism and Effective Death Penalty Act (AEDPA)'s successive-petition provisions. D.E. 78, p.4. In essence, Ramirez argues that Gross's ineffectiveness in not supplementing the *Wiggins* claim he raised in state court justifies an equitable exception to AEDPA's successiveness prohibition. Ramirez, however, has not pointed to any case creating an equitable exception to section 2244(b) based on conflict. *See Williams v. Kelley*, 858 F.3d 464, 473 (8th Cir. 2017) (refusing to find a defect in the underlying proceedings when the same

attorney represented the inmate in state and federal habeas review). Further, AEDPA precludes "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings" from being "a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Gross's representation cannot free Ramirez from AEDPA's prohibition on successive habeas petitions.

This Court, therefore, will also deny Ramirez's Rule 60(b) motion because it is a successive habeas petition.

## IV. Conclusion

The Court finds that Ramirez has not shown that his Rule 60(b) motion is timely or warranted by extraordinary circumstances. Alternatively, this Court lacks jurisdiction to consider Ramirez's Rule 60(b) motion which is, in reality, a successive habeas petition. The Court, therefore, **DENIES** his Rule 60(b) motion. D.E. 78. Under the appropriate standard, 28 U.S.C. §2253(c), the Court finds that no issue relating to Ramirez's Rule 60(b) motion requires appellate review.

ORDERED this 3rd day of January, 2019.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE